NEW-YORK,
May, 1834.

Gates
v.
Graham.

---

GATES vs. A. GRAHAM and others.

Where a contract *under seal* is made, purporting by its terms to be between two *firms* in their partnership names, and the partnership name of one firm is subscribed to the contract, and that of the other firm is subscribed to a counterpart thereof, an action may be maintained against the member of the firm *individually*, who subscribed the name of his firm, unless he proves that he had authority from his co-partners to enter into a contract under seal, and subscribe the name of his firm to it.

And such action may be brought in the names of all the members of the firm with whom the contract purports to be made, although the counterpart is signed by only one member of the firm, in the name of his firm, and no authority is shown authorizing him to affix the name of his firm to a contract under seal.

Where a cause has been removed by appeal from a justice's court into a court of common pleas, and the judgment there affirmed, this court, on a writ of error, will not critically scan the pleadings before the justice, for the purpose of reversing the judgment; especially when such pleadings are imperfect and irregular on the part of the defendant. It behooves a party wishing to avail himself of advantages growing out of the pleadings before a justice, to see that the pleadings on his own part be presented in an unexceptionable manner.

ERROR from the Monroe common pleas. Andrew Graham, Walter Graham and Wanton Graham commenced an action of *covenant* in a justice's court against David Gates, in which they declared on a *contract under seal*, bearing date 29th March, 1828, which they alleged to have been made be-

tween the defendant by the name and description of *Pease,
Gates & Co.* of the one part, and the plaintiffs by the name
and description of *Andrew Graham & Co.* of the other part,
whereby it was agreed that the plaintiffs should transport for
the defendant from Pittsford to Albany or Troy, one canal
boat load of flour, in each of the months of April, May, June,
September, October and November then next ; and one boat
load in the months of July and August then next ; for which
transportation the defendant, by the name and description of
*Pease, Gates & Co.*, agreed to pay to the plaintiffs at the rate
of five shillings and three pence per barrel. The plaintiffs
averred that the defendant had not the flour in readiness, and
that he broke his covenant, &c. The defendant pleaded *non
est factum* and *eighteen* other pleas. The plaintiffs recovered
judgment against the defendant before the justice. The de-
fendant appealed to the Monroe common pleas, on the trial in
which court the contract declared on was produced. It had
the signature of *Pease, Gates & Co.* attached to it, and it was
proved that at the time of its execution there was a *seal* affix-
ed to it, opposite to which, the signature of *Pease, Gates &
Co.* was written by *Daniel Gates,* the defendant in the cause,
but now, on its production in court, a particle only of a wafer
was visible. It was further proved that at the time of the ex-
ecution of the contract a counterpart was signed by *Andrew
Graham,* one of the plaintiffs, who affixed the name of *Andrew
Graham in company* to it, opposite to a seal and the instru-
ments were exchanged between the parties. The counterpart
was produced in court. The firm of *Pease, Gates & Co.* was
composed of the defendant and Justin Gates and Thomas
Pease. The two last named individuals informed two of the
plaintiffs, previous to the execution of the contract, that their
partner Daniel Gates was authorized to make a contract rela-
tive to the transportation of flour. The plaintiffs were joint
owners of a boat, navigated on the canal, and carried on the
business of transportation. When Andrew Graham signed
the counterpart Walter Graham was present, but Wanton
Graham was not there. The defendant objected to the con-
tract being read in evidence, unless the plaintiffs explained by
proof the breaking, defacing or removal of the seal, but the

court overruled the objection, and the contract was read to the jury. The plaintiffs proved a failure in performance of the contract on the part of the defendant, and obtained a verdict, on which judgment was entered. The defendant sued out a writ of error.

*H. Gay,* for the plaintiff in error.

*J. Bellows,* for the defendants in error.

*By the Court,* NELSON, J. The burthen lay upon the defendant to show that he had authority to sign and seal the instrument in question for his co-partners; and the proof should be conclusive on the point, to justify the court in turning the plaintiffs over to a new action. Without now touching the somewhat litigated question whether an authority to seal for another resting in parol, is valid and competent for that purpose, it is sufficient to say, that no authority to seal, of any description, has been shown in this case, before the execution of the contract, nor has there been any subsequent ratification of it by the co-partners.

There was evidence of an existing authority to make the contract for the transportation of the flour, and even without any express power, the defendant was authorized to make such a contract by virtue of the partnership, as it fell within the scope of it; but this gave him no authority to seal. Authority to seal is not to be implied from an express power to make a contract not requiring a seal; nor is it to be derived from the existence of the partnership. One partner, by virtue of it, has no power to seal for another. 7 T. R. 207. 9 Johns. Rep. 285. 1 Wendell, 326. 9 id. 68. The implied power to one partner to act within the limits of the partnership is as complete as an express power to act in a specified case; and if the general power does not confer authority to seal, the other cannot. If the above conclusion is correct, the suit is properly brought against the defendant, and he is personally responsible to the plaintiffs, upon the covenant. 3 Johns. Cas. 180. 13 Johns. R. 310. 2 Caines, 254.

The instrument in question is in substance a deed poll, and no one not named in it can bring an action upon it. 1 Salk. 197. Bull. N. P. 156. 1 Wheat. Selw. 338. 2 Bac. 64. See also 10 Wendell, 91. A counterpart of the agreement was signed and sealed by *Andrew Graham*, in a name purporting to be the name of a firm, and delivered to the defendant, at the time of the delivery of the contract declared on. These contracts, it is contended, are but one instrument in law; and as Andrew Graham showed no authority to seal, the agreements ought to be viewed as a contract between him, individually, and the defendant; and if so, the suit should have been in his name alone. This position, I think, would have been correct, if the deed had been *inter partes*, and signed and sealed by each of the contracting parties. Then it would have been, in contemplation of law, an agreement solely between the individuals executing it, though in a partnership name; neither having authority to seal for their partners. But the execution of the instrument by one party only varies the remedy. The question that arises is, who are the persons named in it? for they are the persons with whom the defendant has covenanted, and who may maintain the action according to the above authorities. The plaintiffs, I think, are described with sufficient certainty for *id certum est, quod certum reddi potest.* They were the persons composing the company, and were designated by the terms or language used. It is like the case of a bond or note given to the trustees or other officers of an incorporated association, where the action must be in the names of the persons thus described, the association not having any corporate name in which the suit may be brought. The case of *Piggot* v. *Thompson,* 4 Bos. & Pul. 14?, illustrates the principle.

There were nineteen issues before the justice, as appears from the record in this case. Many of them issues of law, in the form of issues of fact upon which questions have been raised; but the pleadings are so imperfect and irregular that I shall not examine them. If a party is desirous to plead specially in a suit before a justice, it should be done with more formality and precision than was pursued here, if he expects the common pleas or this court to examine and determine the

case upon questions arising upon the pleadings. We have given to the defendant the benefit of every material fact contained in his numerous pleas, the same as if such facts had been presented in a notice under the general issue, which, from the imperfection of the pleadings, is the most that he can justly claim.

The court were right in permitting the instrument to be read in evidence, notwithstanding the objection growing out of the condition of the seal. The question raised belonged to the jury.

After a critical examination of the facts, and direction of the court below, I am of opinion the judgment should be affirmed.

Judgment affirmed.