Wilcox et al. v. Dodge et al.

## MINOT I. WILCOX ET AL.

### V.

## NORRIS G. DODGE ET AL.

1. VARIANCE.—Where an instrument under seal executed by one of the defendants alone in the absence of all the other defendants, was described in the declaration as made by all the defendants, plaintiffs must show that it was so made or there will be a fatal variance.

2. PARTNER CAN NOT BIND CO-PARTNERS BY INSTRUMENT UNDER SEAL WITHOUT, ETC.—An instrument under seal and signed by one co-partner in the absence of the other co-partners is binding upon the others, if each of the co-partners gave his parol assent previous ·to the execution thereof, or subsequently, with knowledge of its purport, ratified it.  Such prior assent or subsequent ratification need not be express but may be implied from the acts and declarations of the parties whose liability is sought to be established, and from other proper evidence tending to show such assent or ratification, and in the absence of such assent or ratification, the partner who signed the instrument is alone liable under it.

3. PARTNERSHIP, THE GRAND CHARACTERISTIC OF.—Persons engaged in any trade, business or adventure upon the terms of sharing the profits and losses arising therefrom are partners in that trade, business or adventure.  An agreement to share the net profits necessarily implies a sharing of the losses.

4. USUAL CHARACTERISTICS OF AN ORDINARY PARTNERSHIP.—The court is of opinion that the agreement in this case presents all the requisite characteristics of an ordinary partnership, *i. e.*, community of interest in the profits and losses, community of interest in the capital to be employed in the enterprise, and community of power of management.

5. CONSTRUCTION OF CONTRACT —Where a construction of a written contract was indispensable to the decision of the question of partnership it was error for the court to pass upon all matters of fact necessary to a recovery where the general issue was pleaded, and refer to the jury the matters of law arising upon a construction of the contract.

6. INSTRUCTIONS.—An instruction omitting all hypotheses as to certain facts necessary to a recovery and closing with the direction " and your verdict should be in favor of the plaintiffs" is erroneous. The effect of such a direction is to impress the jury with what they would suppose to be the opinion of the court as to the merits of the case, and thus gives the plaintiffs an unfair advantage.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed January 30, 1883.

This action was brought by Dodge and Petree, plaintiffs, against Minot I. Wilcox, Hosea T. Stock, Fred Toms and Charles Magee, defendants, as partners and joint covenantors or payors, to recover of them the stipulated compensation for certain dredging, etc., performed by them under the following contract in writing, described as having been made by all the defendants: " This agreement made this 5th day of October, 1881, between Dodge and Petree, of Little Falls, Herkimer county, New York, parties of the first part, and Frederick Toms and Charles Magee, of Ottawa, Ontario, and Wilcox and Stock, of Toledo, Ohio, co-partners under the firm name of Toms & Co., in South Chicago, parties of the second part.

" The said Dodge and Petree hereby agree to hire to the said Toms & Co., their dredge and two dump scows, and furnish men and fuel to work the same, for the sum of eighty (80) dollars per day of eleven hours, and at the rate of $7.27 per hour for all extra time worked over eleven hours per day; the work to be done with said dredge and scows at such place or places in South Chicago, as said Toms & Co. may direct, upon the property of the South Chicago Dock Company.

" This contract is for the term of one hundred days of eleven hours; and the said Toms & Co. agree to furnish employment for said dredge for the said term of one hundred days at the above price. The said Toms & Co. agree to pay said Dodge and Petree for said work on the 10th day of each month, for all work done in the previous month. In witness whereof the parties to this agreement have hereunto set their hands and seals, this 6th day of October, 1881.

" DODGE & PETREE. [L. S.]

" TOMS & CO. [L. S.] "

The above agreement was specifically declared upon, with the averment that it was made by the defendants as partners, in one count, in another that they made it jointly. The defendants Wilcox and Stock, who alone were served, filed the general issue, also a plea duly verified, denying the co-partnership and joint liability. On the trial it appeared that said agreement was executed by Toms in the absence of all the other defendants. The plaintiffs gave testimony tending to show a prior parol assent on the part of Stock, to the making of the agreement by Toms; also of acts and declarations on the part of both Wilcox and Stock tending to show a subsequent ratification and recognition by them, of it. But there was no evidence tending to show any previous assent thereto on the part of Magee or Wilcox, nor tending to show any subsequent ratification thereof by Magee. The plaintiffs also gave evidence tending to show by acts and declarations that the defendants, Wilcox and Stock, were co-partners with Toms and Magee, in respect to the matter of dredging for the South Chicago Dock Company. The above agreement was admitted in evidence against the objection of the defendants, Wilcox and Stock.

The said defendants, in order to show the relation existing between them and Toms and Magee, at the time of the execution of the foregoing agreement, gave in evidence the following agreement entered into between all of said parties, in the month of May, previous to the contract sued on:

" Whereas, by agreement in writing, dated April 7, 1881, between the South Chicago Dock Company on the one part,

and Frederick Toms and Charles Magee, partners, under the name of Toms & Co., and Philip H. Decker, on the other part, the said Toms & Co., and Decker agreed, for certain moneys to be paid them by said Dock Company, to do certain dredging and docking, to wit: Toms & Co. to do the dredging, and Decker the docking, on the Calumet river, in the county of Cook and State of Illinois, for said Dock Company;

"And whereas, also, by a subsequent agreement dated.... 1881,........., between said Dock Company, said Toms & Co., Decker, and the firm of Wilcox & Stock, composed of Minot I. Wilcox and Hosea T. Stock, and with the assent of certain other parties, sureties for said Toms & Co., it was stipulated on the part of the Dock Company, that in case said Toms & Co. should enter into a contract with Wilcox and Stock touching said work of dredging, said Dock Company would assent to such subletting of said work, and would pay said Wilcox and Stock, instead of the said Toms & Co. ninety (90) per cent. of the monthly estimates for the same, as provided in the first contract above described.

" Now, therefore, it is agreed between the said Toms & Co. and the said Wilcox and Stock, that the said Wilcox and Stock will do all the dredging provided for in the last named contract with the South Chicago Dock Company upon the terms following, to wit:

"The said Wilcox and Stock shall furnish at Toledo, Ohio, necessary dredging machines, not less than three, to do the said work. These dredging machines shall be valued at their cash value at Toledo before their removal, and the expense of fitting the same for removal to the said Calumet river, or the place where said work is to be done, and the towage and all other expense of so moving the same shall be borne equally by said parties; that is, said Toms & Co. shall bear one half and the said Wilcox and Stock one half; and in case, after the completion of the work, it shall be found necessary to return the said dredging machines to Toledo, the expense of so returning the same shall be borne by the said parties in the same proportion. The said Toms & Co. shall furnish all the money necessary to carry on the said work until estimates are made

Wilcox et al. v. Dodge et al.

under said first contract, and any additional money required to carry on said work to completion, and the said Wilcox and Stock shall be paid for doing the said dredging as follows, to wit:

" They shall be allowed and paid by said parties jointly from the proceeds of the said work, a sum equal to ten per centum per annum, upon the valuation of the said dredging machines at Toledo, for the time that the said machines are employed in being removed from Toledo to said work as aforesaid, and in doing the same, and in being returned to Toledo, if they shall be so returned.

"After the completion of the said dredging, the net profits of doing the same, after paying for the use of said dredging machines, as aforesaid, and all other expenses, shall be equally divided between the said parties, one half to said Wilcox and Stock, and one half to the said Toms & Co.

" It is further agreed by the said parties, that the 90 per centum of all estimates made and paid by said South Chicago Dock Company, as provided in the said contract with them, shall be paid to the said Wilcox and Stock, but the said Wilcox and Stock, out of the same, shall pay what is necessary to carry on the said work, so far as said per centum shall be required for that purpose.

" It is further agreed that all risk of loss by transporting said dredging machines from Toledo to said work, and the return thereof to Toledo, if required, shall be equally upon these contracting parties, and all losses consequent thereon shall be equally paid by each, and all breakages and repairs of said dredging machines, either in transportation or during the progress of said work, shall be paid equally by each of these contracting parties.

" It is further agreed that if any default shall be made in carrying out the said first named contract with the South Chicago Dock Company, whereby any damages or forfeitures shall occur that the same shall fall upon the said Toms & Co., and not upon the said Wilcox and Stock; and that said Wilcox and Stock do not assume any liability whatever to fulfill the said contract with the said Dock Company, except

as to doing the said dredging, and that they do not assume to do it in the time provided for in said contract, and if any loss happens on account thereof, it shall fall upon the said Toms & Co.

" It is further agreed that neither of the partners of the said Toms & Co. or the said Wilcox and Stock shall be allowed or paid anything as between themselves, for their personal services or expenses in attending to or supervising the said work of dredging; and if either of said firms, or either members of either of them, shall hereafter, before the completion of the work by this agreement provided for, obtain any contract for similar work upon the said Calumet river, or in the vicinity, it is agreed that said contract so obtained shall be performed under the terms of this agreement.

" A valuation of the following dredging machines at Toledo, as provided in this contract, has been made as follows, to wit:

Dredge Toledo ....................... $ 10,000
Dredge Goodwin ....   ..................7,000
Clam Dredge........................3,000

" And it is stipulated that this shall be the valuation of said dredging machines if they are used in carrying out said contract; and if any other dredging machines shall be used, and the valuation, before they leave Toledo, can not be agreed upon by the parties there before leaving, said valuation shall be left to two persons, one to be chosen by each of said parties, and if they can not agree, it shall be left to an umpire, to be chosen by those two.

" In witness whereof we have hereunto signed this agreement this ———— day of May, A. D. 1881.

" M. I. WILCOX,
" H. T. STOCK,
" F. TOMS,
" CHAS. MAGEE."

The evidence conclusively shows that the dredge and scows and men were furnished, and the work sued for was done, under and in performance, on the part of the plaintiffs, of said first mentioned agreement. There was no attempt to recover upon

Wilcox et al. v. Dodge et al.

a *quantum meruit*, although the common counts were included in the declaration.

The court, among other instructions containing other and different propositions of law, gave to the jury, on behalf of the plaintiffs, the following:

2. The jury are instructed that if they believe, from the evidence in this case, that the defendants, Wilcox and Stock, were partners with Toms & Co., and engaged in doing dredging work at South Chicago as such partners, under the firm name of Toms & Co., the said Wilcox and Stock are liable to the plaintiffs in this action, for the full amount of their claim in evidence in this cause. Given.

3. And again, if the jury believe from the evidence in this case, that the defendants, Wilcox and Stock, were jointly interested in the contract for doing the dredging work at South Chicago with Toms & Co., and if the jury further believe from the evidence, that the plaintiffs herein, under a contract with said Toms & Co., did a portion of such dredging work at a compensation agreed upon between them and said Toms & Co., with the knowledge, consent and approval of said Wilcox and Stock, on the joint account of all said parties, then, under the count in the declaration herein charging said defendants, Wilcox and Stock, as liable to the plaintiffs on the ground that they jointly and severally contracted with the plaintiffs for doing said work, the said defendants would be liable in this action, although you may not believe from the evidence that said Wilcox and Stock were actually partners with the other defendants, Toms & Co., or even that they were such partners as to such third persons. Given.

6. The jury are instructed, that although they may not be satisfied from the evidence that the deferdants, Wilcox and Stock, actually made and entered into the contract with the plaintiffs, introduced in evidence, signed Toms & Co., and sought to be recovered upon herein, yet if the jury believe from the evidence that said firm of Wilcox and Stock, after such contract was made, ratified and adopted it as their own, and did and accepted the work done by the plaintiffs under

said contract, and received the benefits thereof, and treated the plaintiffs as their own employes, then said ratification of said contract of employment, under which said plaintiff worked, would be as binding upon said Wilcox and Stock as if made by them in the first place; and your verdict should be in favor of the plaintiffs.   Given.

9. Every partner possesses full and absolute authority to bind all the partners by his acts or contracts, in relation to the business of the firm, in the same manner and to the same extent as if he held full power of attorney from them; and as between the firm and third parties who deal with it in good faith, and without notice, it is a matter of no consequence whether the partner is acting fairly with his co-partners in the transaction or not, if he be acting within the scope of his authority, and for the firm.

The jury found the issues for the plaintiffs, and assessed their damages at $2,029.46, for which judgment passed, and the defendants appealed to this court.

Messrs. SCHUYLER & FOLLANSBEE, and CHARLES KENT, for appellants; that a mere participation in the profits does not create a partnership *inter sese*, cited Adam v. Funk, 53 Ill. 219; Lintner v. Melliken, 47 Ill. 178; Irvin v. N. C. & St. L. R'y Co. 92 Ill. 103; Smith v. Knight, 71 Ill. 198.

In determining the question of partnership, the intention of the parties must be considered: Cox v. Hickman, 8 House of Lords Cases, 268; Bucher v. Bush, 45 Mich. 196; Waugh v. Carver, 2 H. Bl. 235; Loomis v. Marshall, 12 Conn. 69; Denny v. Cabot, 6 Met. 82; Hart v. Kelly, 83 Penn. 292.

As to estoppel by conduct: The People v. Brown, 67 Ill. 437; Hill v. Epley, 31 Penn. 334; Decell v. Odell, 3 Hill, 215; Paterson v. Lytle, 1 Jones, 53; Beaupland v. McKeen, 4 Casey, 124; Robinson v. Justice, 2 Penn. 19; Keeler v. Vantuyle, 6 Barr, 253; Cook v. Slate Co. 36 Ohio, 135; Chandler v. White, 84 Ill. 438; St. Joseph M'f'g Co. v. Daggett, 84 Ill. 536.

In the absence of authority, a partner can not bind his co-

Wilcox et al. v. Dodge et al.

partners by a contract under seal: Paine v. Weber, 47 Ill. 41; Sloo v. State Bank, 1 Scam. 428.

The suit and recovery is on the contract and by that the plaintiffs must stand or fall: Walker v. Brown, 28 Ill. 378; Compton v. Payne, 69 Ill. 354; Foley v. Bushway, 71 Ill. 386.

Where evidence is conflicting, instructions should be accurate: Volk v. Roche, 70 Ill. 299; Cashman v. Cogswell, 86 Ill. 66; Evans v. George, 80 Ill. 79.

The written contract in evidence was for the court to construe and instruct jury as to legal effect, etc.: Boston, etc. S. Co. v. Smith, 11 Cent. L. J. 211.

Erroneous instructions given on one side are not cured by correct ones given on the other: Ill. Linen Co. v. Hough, 91 Ill. 63; Wabash R'y Co. v. Henks, 91 Ill. 406.

Messrs. Quigg & Tuthill, for appellees; that the finding of jury upon question of fact is conclusive unless actuated by prejudice, etc., cited Plummer v. Ridgon, 78 Ill. 222; Miller v. Balthasser, 78 Ill. 302.

As to partnership: Story on Partnership, Ch. 1, § 2; Parsons on Partnership, Ch. 2, § 1; Robbins v. Laswell, 27 Ill. 365; Nichoff v. Dudley, 40 Ill. 408.

A contract made by a person not originally authorized to make it but subsequently ratified by the principal, is binding upon the latter: Easter v. Farmers' Nat. Bank, 57 Ill. 216.

The extrinsic evidence was sufficient to warrant the jury in believing a partnership existed: Mc Stea v. Mathews, 50 N. Y. 166; Chester v. Dickinson, 54 N. Y. 1.

As to partnership being shown by declarations and conduct of parties: Bancroft v. Hayworth, 29 Ia. 462; Edwards v. Tracey, 62 Penn. 374.

As appellants were generally believed to be partners and held themselves out as such and the credit was given to them alone, they are liable as partners: Story on Partnership, § 64; Hefner v. Palmer, 67 Ill. 161.

McAllister, J. It appears by the undisputed testimony,

that the services sued for were all performed under the written contract declared upon, bearing date October 6, 1881. That instrument was under seal, and was executed by defendant Toms alone, in the absence of all the other defendants, and was described in the declaration as having been made by all the persons named as defendants. Under the issues, it was incumbent upon plaintiffs to show that it was made by all such persons, or there would be a fatal variance. Fox v. Norton, 9 Mich. 207; Gates v. Graham, 12 Wend. 53.

In order to show that it was so made, it was necessary, under the circumstances of the case, that it be made to appear that all the defendants were co-partners at the time the contract was executed. Assuming that they were, then it is settled by the great weight of authority, that the instrument, though under seal and signed by one in the absence of the others, would be held binding, if each of the others had either given his parol assent previous to the execution thereof, or had subsequently, with knowledge of its purport, ratified it. Such prior assent or subsequent ratification need not be express, but may be implied from the acts and declarations of the parties whose liability is sought to be established, and from other proper evidence tending to show such assent or ratification. Gram v. Seton, 1 Hall (N. Y.), 262; Smith v. Kerr, 3 Comstock, 144; Butler v. Stocking, 4 Selden, 408; Purviance v. Sutherland, 2 Ohio (N. S ), 478; McDonald v. Eggleston, 26 Vermont, 154; Drumright v. Philpot, 16 Ga. 424; Cady v. Shepherd, 11 Pick. 400; Swan v. Stedman, 4 Metc. 548; 2 Kent's Com. * pp. 47, 48; Chitty on Contracts (10th Am. Ed.), 278, note c.

In the absence of such assent or ratification, by the other alleged partners, Toms, the one who signed the contract, would alone be liable upon it. White v. Skinner, 13 Johnson, 307; Skinner v. Dayton, 19 Johns. 513; Gates v. Graham, *supra*. That being the case, and the contract binding as to him, and the services having been performed under it, the plaintiffs would be confined, in their remedy at law, to the contract so made, and would not be at liberty to proceed against the defendants, Wilcox and Stock, upon any implied contract or on a *quantum*

*meruit.*   Walker v. Brown, 28 Ill. 378; Compton v. Payne, 69 Ill. 354; Ford v. McVay, 55 Ill. 119.

Were the defendants partners at the time of the making the contract sued on? The answer to that question depends upon the construction to be put upon the contract between them, respecting the same subject-matter entered into, in the previous month of May.

When that contract was made Toms and Magee were under a previous contract with the South Chicago Dock Company, to do the same dredging for that company, and which provided for a compensation by the latter, to them, upon estimates, etc.   By the said contract between Toms and Magee and Wilcox and Stock, made in May, 1881, it seems to us there was a community of interest in the capital to be employed in the enterprise.   The three dredges which were to be used, it is true, belonged to Wilcox and Stock, and were, at the time of the contract, at Toledo, Ohio.   They were to be there appraised at their cash value ; the expenses of putting them in repair, of bringing them from Toledo to South Chicago, and returning them, if returned, were to be borne equally by the parties; all risk of loss by transporting them to South Chicago, and returning to Toledo, and all losses consequent thereon, and all breakages and repairs, either in the transportation or during the progress of the work, were to be borne equally by said parties.   The contract provided further, that there should be allowed to Wilcox and Stock, to be paid jointly by the parties from the proceeds of said work, a sum equal to ten per centum per annum, of the valuation of said dredges, for the time employed in removing them, during the work, and in returning them to Toledo, if returned.   Toms and Magee agreed to furnish all the money necessary to carry on the work, until estimates were made under their contract with the Dock Company, and any additional money required to carry on said work to completion; also that Wilcox and Stock might receive ninety per centum of all estimates made, and paid by the Dock Company, under its contract with Toms and Magee, but Wilcox and Stock were to pay out of it what was necessary to carry on the

work, so far as said percentage should be required for that purpose. There was also a community of interest in the profits and losses. The contract contained this provision: "After the completion of the said dredging, the *net profits* of doing the same, after paying for the use of the dredging machines, as aforesaid, and all other expenses, shall be equally divided between the said parties, one half to said Wilcox and Stock and one half to the said Toms & Co." There was also contemplated by the parties a community of power of management, and there was an intention to create the relation of partnership, as shown by the following provision of the contract: "It is further agreed that neither of the partners of said Toms & Co., or the said Wilcox and Stock, shall be allowed or paid anything, as between themselves, for their personal services or expenses, in attending to or supervising the said work of dredging ; and if either of said firms, or either members of either of them, shall hereafter, before the completion of the work by this agreement provided for, obtain any contract for similar work upon said Calumet river, or in the vicinity, it is agreed that said contract so obtained shall be performed under the terms of this agreement." It appears that operations under this contract had been commenced and carried to a substantial extent when the contract sued on was entered into, and which embraced the same work as that contemplated by the above contract between all the defendants. We are inclined to the opinion that by such contract between all the defendants the relation of partners arose. We have no space to give to any extended discussion of the question or citation of authorities.

"An agreement that something shall be attempted with a view to gain, and that the gain shall be shared by the parties to the agreement, is the grand characteristic of every partnership, and is the leading feature of nearly every definition of the term." 1 Ewell's Lindley on Part. 1. Again on page 15, the same author says : "Nothing, perhaps, can be said to be absolutely essential to the existence of a partnership, except a community of interest in profits, resulting from an agreement to share them. But, although this is so, the usual character-

Wilcox et al. v. Dodge et al.

istics of an ordinary partnership, are a community of interest in profits and losses, a community of interest in the capital to be employed, and a community of power in the management of the business engaged in." Again, on page 18, the same learned and accurate author says : " But an agreement to share profits and losses, may be said to be the type of a partnership contract. Whatever difference of opinion there may be as to other matters, it admits of no doubt whatever, that persons engaged in any trade, business or adventure, upon the terms of sharing the profits and losses arising therefrom, are partners in that trade, business or adventure."

An agreement to share the net profits necessarily implies a sharing of the losses.

Considering the agreement in question, in all its legal aspects, we are inclined to the opinion that it presents all the requisite characteristics of an ordinary partnership. Notwithstanding that conclusion, we are compelled to reverse the judgment below, for errors in the instructions given to the jury, on behalf of the plaintiffs. The first instruction purported to be a definition of the term partnership, and is that given in Parsons on Partnership, p. 6. While that definition, as a starting point in the author's treatise, might be very well, yet we very much doubt whether it is so accurate and explicit as would justify its being given in that form, as an instruction to the jury. 1 Lindley, *supra*, 4 *et seq.*

The second instruction was, that if the jury believed from the evidence, " that the defendants Wilcox and Stock were partners with Toms & Co., and engaged in doing dredging work at South Chicago, as such partners, under the firm name of Toms & Co., the said Wilcox and Stock are liable to the plaintiffs in this action, for the full amount of their claim in evidence in this cause." By that instruction, the court passed upon all matters of fact necessary to a recovery, where the general issue was pleaded, and referred to the jury, the matters of law arising upon a construction of the contract between the defendants, above discussed. A construction of that written contract was indispensable to the decision of the question of partnership, and that devolved exclusively upon the court.

Wilcox et al. v. Dodge et al.

The third instruction was wrong and misleading because it omits any hypothesis of whether the work was or was not done, under the sealed instrument declared on, and implied that the plaintiffs might recover upon some other contract express or implied, which was several as to Wilcox and Stock.

The sixth instruction was manifestly erroneous because, as respects the matter of a subsequent ratification, it omits any hypothesis as to Wilcox and Stock, or either of them, having any knowledge of the import of the contract, supposed to have been ratified; and because omitting all hypothesis as to the other facts necessary to a recovery, it closes with this independent direction: "and your verdict should be in favor of the plaintiffs." That the effect of such a direction would be to impress the jury with what they would suppose to be the opinion of the court as to the merits of the case, and thus give the plaintiffs an unfair advantage, there can be no doubt, and just such a direction was condemned in Roach v. The People, 77 Ill. 29.

The ninth was thus: "Every partner possesses full and absolute authority to bind all the partners by his acts or contracts, in relation to the business of the firm, in the same manner and to the same extent as if he held full power of attorney from them." Now, the question here was, as to other alleged partners being bound by an instrument under seal, executed by one of such alleged partners, in the absence of all the others. It is well settled and elementary law, that no such power is implied from the partnership relation, as will authorize one to bind the others by the execution of a deed or sealed instrument, not made in the presence of the others or the one sought to be held bound. Sloo v. Bank of Illinois, 1 Scam. 441, and cases above cited. That instruction was erroneous and misleading. The judgment below will be reversed and cause remanded.

Judgment reversed.