Elizabeth Winstanley *et al.*

*v.*

Henry G. Gleyre *et al.*

*Filed at Mt. Vernon June 19, 1893.*

1. Partnership—*enterprise for platting and selling land of one of the parties.* The owner of a two hundred acre tract of land near a city entered into a written agreement with four other persons, part of whom were real estate brokers, whereby the latter, at their own expense, were to lay out and plat the land into lots and blocks, advertise and sell the same, and pay the first party the sum of $50,000, after which the balance derived from the sale of the remaining lots was to be divided equally between the parties, each taking a fifth: *Held,* that by the contract the parties created a partnership in the enterprise of subdividing, platting, advertising and selling the two hundred acres of land, the contract giving to each a community of interest in the profits of the enterprise.

2. In such case, after the payment to the party furnishing the land, of the $50,000 provided for by the contract, the residue of the land unsold became, in equity, partnership assets, and the court, on bill filed by one of the partners, had the power to order it sold and the proceeds distributed, and also to set aside deeds made by the partner holding the legal title, in fraud of the rights of other partners.

3. Same—*partner dealing in partnership property, for his own benefit.* A partner is, by virtue of the partnership relation, incapacitated to purchase or deal in the partnership property for his own benefit, and his purchase will be held to be in trust for the benefit of the co-partnership.

Appeal from the Circuit Court of St. Clair county; the Hon. George W. Wall, Judge, presiding.

This was a bill in chancery, brought by Henry G. Gleyre and Ferdinand A. Gleyre against Elizabeth Winstanley, Josephine Fuchs, John W. Renshaw and Caroline Renshaw. The bill alleges that, on the 25th day of January, 1890, the several parties complainant and defendant, with the exception of Caroline Renshaw, entered into an agreement in writing, under their respective hands and seals, and duly acknowledged by them, the provisions of which were as follows:

"This agreement, made and entered into this 25th day of January, 1890, by and between Elizabeth Winstanley, of the county of St. Clair, and State of Illinois, party of the first part, and Josephine Fuchs, John W. Renshaw, H. G. Gleyre and F. A. Gleyre, parties of the second part, Witnesseth: That whereas the said party of the first part is desirous of selling the land hereinafter described, and the said parties of the second part have agreed to make the efforts, undertake the management and incur the expense relative to said sale hereinafter mentioned: Now therefore, the said parties of the second part, in consideration of the power of attorney hereinafter given them for the sale of the land hereinafter described, and their interest therein as hereinafter expressed, do covenant and agree, to and with the said party of the first part, that they will have surveyed, subdivided and platted into lots, with appropriate streets and blocks, duly recorded in the proper office of the county, a plat of the subdivision thereof, all the land hereinafter described, and will also, with promptness and dispatch, as soon as the land is properly laid off, which they undertake shall be done with all reasonable speed, advertise said land for sale. The advertisements shall be by public notice in appropriate newspapers, by hand-bills, pamphlets and other usual methods of attracting public attention to contemplated sales. The said parties of the second part further covenant and agree to use their best efforts in the management for its sale and the disposal of said property. All expenses of every sort connected with the surveying, subdividing, platting and advertising said land, and every expense connected with the sale thereof, to be borne by the said parties of the second part.

"In consideration of the premises, the said party of the first part has constituted, nominated and appointed, and does by these presents irrevocably constitute, nominate and appoint, the said parties of the second part, her true and lawful attorneys, for her and in her name and stead, to grant, bargain

and sell, convey and confirm, in fee simple absolute, to such parties and their heirs forever, as to them may seem fit, on the terms hereinafter stated, all the following real estate, lying in the county of St. Clair and State of Illinois, more particularly described as follows, to-wit:

"Lots nine, ten, sixteen, seventeen, eighteen, nineteen, and lot lettered 'A' of the first subdivision of Cahokia; except two acres in lots nine and ten, upon which her residence now stands, which she reserves for her homestead.

"The said parties of the second part are authorized and empowered to sell said land or any part thereof in such quantities or areas as to them may seem best, with the restriction only, that none of said land shall be sold at a less rate than three hundred dollars for every acre, and in that proportion for every fraction thereof. Sales to be made for cash, or one-third in cash and the remainder secured by mortgage in the usual form, and payable in one, two and three years, or sooner, with interest on the reserved payments at not less than six per cent per annum.

"Before any of the parties herein mentioned, except the said party of the first part, shall be entitled to any of the proceeds of the sale of said land, the said party of the first part shall be paid, out of the said proceeds, the sum of $50,000. After the said party of the first part shall have been paid the sum of $50,000, then all the surplus over and above the sum of $50,000, shall be divided equally as follows: One-fifth to said party of the first part, and one-fifth to Josephine Fuchs, one-fifth to the said John W. Renshaw, one-fifth to Henry G. Gleyre and one-fifth to the said Ferdinand A. Gleyre.

"The said party of the first part, until she shall have been paid her full $50,000, shall be entitled to all cash received from such sales, and if she shall so elect, shall be entitled also to all notes for reserved payments, until her full $50,000 shall have been so paid her in money or in notes; but if she declines to receive the notes arising from any such sales, then

it is agreed by the parties hereto, that said notes shall be held by John W. Renshaw for the parties herein mentioned, in proportion to their respective interests as herein set forth.

"All said notes taken for the reserve payments on the purchase money of the land herein described shall be made payable to the order of John W. Renshaw. When said notes shall be collected, the amounts arising therefrom shall be applied to the payment of any amount due the said party of the first part on the sum of $50,000 hereby secured her on said land, if said land shall realize the sum of $50,000, and the remainder shall be paid, one-fifth to said party of the first part, one-fifth to Josephine Fuchs, one-fifth to the said John W. Renshaw, one-fifth to the said Henry G. Gleyre, and one-fifth to the said Ferdinand Gleyre.

"The said parties of the second part are hereby authorized to deliver to the purchasers from them under this power of attorney, deeds with the ordinary statutory or other covenants of warranty, and the said party of the first part hereby ratifies and confirms all that the said parties of the second part may do in the premises, under the powers hereby conferred upon them, and the said party of the first part binds herself by this instrument, to execute any deed desired from her by any party purchasing from said second parties, confirming sales made by them under these powers.

"The election of said party of the first party to accept any notes above referred to, as contemplated to be taken for the reserved payments, shall be evidenced by her accepting any of said notes from said John W. Renshaw, by his endorsement and delivery thereof to her.

"It is agreed that the powers hereby conferred upon the parties of the second part can be exercised by the majority of them, and any two of said parties are authorized and empowered to execute all deeds and to make all sales, with the same force and effect as if all the said parties of the second part were acting."

Subsequently, on the sixth day of February, 1890, a supplemental agreement was executed by the same parties, under their hands and seals, and duly acknowledged, which provided as follows:

"Whereas, the party of the first part agrees and firmly binds herself to sign all deeds for lots or parcels of land presented to her: Now, therefore, the parties of the second part hereby waive their right and power given them in the power of attorney in the said foregoing contract, as far as relates to the signing of deeds, except in the case of serious illness or death, the said foregoing contract with full force and effect as if this supplementary agreement had not been written."

The bill sets out the foregoing contract and supplemental contract *in extenso,* and alleges, in substance, that the complainants have in all respects carried out the contract, so far as they could without the co-operation of all the parties thereto, and have expended large sums of money in laying out the tracts of land therein described, and have advertised the land for sale in a most profuse manner and at large expense, and, amongst other things tending to bring the land to public notice, they have caused a colored map thereof to be prepared, of which 2500 copies have been printed and circulated; that since the making of the contract, Elizabeth Winstanley, with the assistance of defendant John W. Renshaw, has sold and conveyed a large portion of the land, but how much the complainants can not state, and has received in payment therefor a sum in excess of $50,000; that Renshaw, who has managed the property for Elizabeth Winstanley, has neglected and refused to furnish the complainants a statement of the amount of land sold and the sum realized therefor, although often requested so to do; that the complainants have at different times negotiated sales of different portions of the land at favorable prices, but that Renshaw and Mrs. Winstanley have refused and failed to cause deeds to be executed in accordance with the sales thus negotiated.

That Mrs. Winstanley has made sales without consulting the complainants, at less than could have been obtained for the land; that combining and confederating with John W. Renshaw and Caroline Renshaw, she being the wife of John W. Renshaw and the sister of Mrs. Winstanley, Mrs. Winstanley has made conveyances of portions of the land to Caroline Renshaw, that is to say, on August 18, 1890, she conveyed to her three certain blocks of the land subdivided for a pretended consideration of $3600; and on June 9, 1890, she also conveyed to Caroline Renshaw another block for a pretended consideration of $3500; and also January 22, 1891, she made to her a pretended conveyance of seven blocks and parts of two other blocks in the subdivision for a pretended consideration of $15,000; that those conveyances were not made in good faith, and were without consideration, and that the value of the land thus conveyed was much in excess of the pretended considerations named in the deeds, and they were made for the purpose of defrauding the complainants and of depriving them of their just profits arising from the sale of the lands at their true value; that Mrs. Winstanley also, on August 18, 1890, conveyed to defendant Josephine Fuchs, who is also her sister, for a pretended consideration of $4500, two and one-half blocks in the subdivision, and it is also charged that such conveyance was made without sufficient consideration, and in fraud of the rights of the complainants.

The bill prays for an accounting, and that the pretended sales to Caroline Renshaw and Josephine Fuchs be set aside; that Mrs. Winstanley be enjoined from conveying any more of the lands except with the consent and approval of the complainants; that a receiver be appointed to take charge of the business of the parties covered by the agreement, with directions to sell such portions of the land as have not been sold, and such as have been conveyed but not in good faith, and

for such other and further relief as the nature of the case may require, and as to equity may appertain.

The defendants answered, admitting the execution of the contracts as alleged, but otherwise denying the equities of the bill. At the hearing, which was had on pleadings and proofs, evidence was introduced tending to prove performance of the contracts on the part of the complainants as alleged, and among other things, that they, together with defendants Renshaw and Fuchs, caused the land in question, consisting of about 200 acres, with the exception of 65 acres thereof which was omitted by consent of all the parties, to be subdivided and platted, under the name of "Winstanley Park;" that they also caused maps of the subdivision, showing the blocks, lots, streets and alleys, to be made and distributed as advertisements, and that by sign-boards, newspaper advertisements and otherwise, the lands were offered to the public for sale and that they also advanced a portion of their shares of the expenses; that Mrs. Winstanley afterward, with the assistance of Renshaw, but without consulting the complainants, sold and conveyed the 65 acres not platted and various portions of the land embraced in the subdivision, to various parties, for the aggregate sum of $49,946; that she had also entered into a contract with her two sisters for the sale to them of three lots in the subdivision for $600, a contract which the court by its decree confirms, making the total amount with which Mrs. Winstanley is chargeable $50,546; that she has also made to her sisters the several conveyances charged in the bill, and that such conveyances were not in good faith nor for an adequate consideration; that Caroline Renshaw and Josephine Fuchs have each sold and conveyed to *bona fide* purchasers some portions of the lands so conveyed to them, the sums thus realized by Josephine Fuchs being $2086.50, and those realized by Caroline Renshaw being $5400. It also appears that Caroline Renshaw has erected a dwelling house and placed other

improvements on certain of the lots conveyed to her, the value of the lots so improved being $800, and she was accordingly charged in the decree with that sum, and her title to the lots improved was confirmed. The total amount with which Mrs. Winstanley and her two sisters are thus shown to be chargeable is $58,832.50. It also appears that Mrs. Winstanley has advanced the sum of $1000, towards defraying the expenses of platting, and advertising, for which she is entitled to credit.

The decree finds, in substance, that the contracts in question constituted the parties thereto partners in the enterprise of platting, subdividing, advertising and selling the lands, Mrs. Winstanley to receive the first $50,000 realized from sales, the other four contracting parties to pay the expenses incident to platting, advertising and selling the land, and the five to share equally in the net profits, after the $50,000 were paid. It is accordingly decreed that the partnership thus created be dissolved, and that the assets of the firm be distributed between the partners according to their respective interests. The sales from which the $58,832.50 had been realized, having been made to innocent purchasers, were confirmed, and the conveyances to Caroline Renshaw and Josephine Fuchs, except as above indicated, were set aside. Caroline Renshaw and Josephine Fuchs are each ordered to pay to the partnership the sums in their hands realized from sales, and Mrs. Winstanley is also ordered to pay over the amount in her hands after deducting $50,000. Out of the moneys thus paid in, Mrs. Winstanley is to be paid the $1000 advanced by her for the payment of expenses, and that amount is charged to the other parties, after crediting them with the sums advanced by them respectively for the payment of expenses. The surplus on hand collected from Mrs. Winstanley, Mrs. Renshaw and Mrs. Fuchs, after adjusting the account for expenses, is ordered to be divided equally between the five partners, and the master is ordered to sell the lands and lots undisposed of,

and distribute the proceeds one-fifth to each of the parties to the contracts.

From this decree the defendants to the bill have appealed to this court.

Mr. CHARLES P. KNISPEL, and Mr. L. H. HITE, for the appellants:

A mere participation in the profit and loss of a venture, by one who has no interest in the property, does not constitute a partnership. *Clifton* v. *Howard,* 89 Mo. 192; *Newspaper Co.* v. *Farrell,* 88 id. 594; Parsons on Partnership, (2d ed.) 149.

A community of interest does not make a partnership. *Morgan* v. *Farrell,* 58 Conn. 413.

The joining of two or more persons in a single adventure, in which the profits are to be divided equally, does not constitute them partners, in such a sense as will oust a court of law of jurisdiction. *Hurley* v. *Walton,* 63 Ill. 260; *Snell* v. *DeLand,* 43 id. 323; *Adams* v. *Funk,* 53 id. 219; *Fawcett* v. *Osborn,* 32 id. 411.

Where the agreements between the parties create a partnership in the profits of sales in a lumber yard, but not in the manufacture of the lumber, a bill to compel a division of the profits of the manufacture can not be entertained. *Freese* v. *Ideson,* 49 Ill. 191.

Where one furnishes a farm and the other agrees to "labor and till," and the profits to be divided, this does not constitute a partnership. *Blue* v. *Leathers,* 15 Ill. 31.

Even if the relation of the parties to this suit was one of partnership in the benefits of sale, yet the land itself was not partnership property, and none of the parties can insist upon a sale of the land against the will of the owner, Mrs. Winstanley. Lindley on Partnership, 56.

A member of a partnership formed for the purpose of buying and selling land has authority to sell the land. *Young* v. *Wheeler,* 34 Fed. Rep. 98.

A written contract by a real estate agent and the owner of land to put land upon the market and advertise and sell it for a share in the surplus profits, is one of agency, and not of partnership. *Durkee* v. *Gunn,* 41 Kan. 496.

There was no fraud in the conveyances made by Mrs. Winstanley to her sisters. 3 Wait's Actions and Defenses, 469; 8 Am. and Eng. Ency. of Law, 749.

As to the sufficiency of the evidence to show fraud, see *Shinn* v. *Shinn,* 91 Ill. 477; *Root* v. *Cook,* 81 id. 266.

The mere fact of relationship will not characterize a sale as fraudulent. *Waterman* v. *Donalson,* 43 Ill. 32; *Dunlap* v. *Bowmanville,* 26 Pa. St. 73.

One who purchases for a valuable consideration will be protected in such purchase, although the grantor was in debt, and intended by such sale and conveyance to hinder and delay creditors. *Farlin* v. *Sook,* 30 Kan. 401; 46 Am. Rep. 102.

If the consideration be valuable, inadequacy alone will not make the conveyance fraudulent, for the law will not "weigh consideration in diamond scales." *Roe* v. *Wilmot,* 2 Wils. 358.

A voluntary conveyance of lands by a father to his sons, by way of advancement, will not be fraudulent as to creditors of the father, if he retain ample means and property to pay all his debts and liabilities. *Fanning* v. *Russell,* 64 Ill. 386; *Matthews* v. *Jordan,* 88 id. 602.

Every conveyance having the effect to delay or hinder creditors in their just and lawful actions, suits, debts, etc., is not therefore fraudulent, but the conveyance, in order to be so, must be made or contrived of malice, fraud, covin, collusion or guile, with that intent. *Ewing* v. *Runkle,* 20 Ill. 448.

The relation between the complainants and Mrs. Winstanley was one of agency, only, and before a broker is entitled to compensation for his services he must produce a purchaser ready, willing and able to make a purchase. *Putman* v. *How,* 39 Minn. 363; *Hayden* v. *Gillo's Admr.* 42 Mo. App. 3, and

35 id. 653; *Stinde* v. *Sharff*, 36 id. 19; *Alden* v. *Earle*, 56 N. Y. Sup'r, 369; *Wall* v. *Illuminating Co.* 21 id. 106; *Sibbard* v. *Iron Co.* 83 N. Y. 381; *Stewart* v. *Murray*, 92 Ind. 544; *Kimberly* v. *Henderson*, 29 Me. 515; *Richards* v. *Jackson*, 31 Md. 252; *Sievers* v. *Griffin*, 14 Bradw. 66; *McConaughy* v. *Mahannah*, 18 Ill. App. 173; *Davis* v. *Gassette*, 30 id. 47; *Parmely* v. *Head*, 33 id. 136; *Monroe* v. *Snow*, 131 Ill. 135; *McClave* v. *Paine*, 49 N. Y. 563; *McArthur* v. *Stansen*, 58 Wis. 41; *Fisk* v. *Honarie*, 13 Ore. 164.

An agent is entitled to commission only when he has faithfully performed and completed the work out of which the commission is to be earned. *Harver* v. *Cook*, 24 Ill. App. 139; *Hoyt* v. *Shipherd*, 70 Ill. 309.

Messrs. G. & G. A. KOERNER, and Mr. FRED. B. MERRILLS, for the appellees:

The agreement made the parties partners in the enterprise. *Merrill* v. *Colehour*, 82 Ill. 618; *Boone* v. *Clark*, 129 id. 466; *Roby* v. *Colehour*, 135 id. 300.

Partners are termed *quasi* trustees for each other, and a fiduciary relation exists between them. The dealings of the partners with each other, and the subject matter of their relation, are governed by the same rules which determine the duties of actual trustees towards their *cestuis que trust.* Pomeroy's Eq. Jur. sec. 1088.

One duty is not to do any act inconsistent with the interests of the other partners. This rule applies to partners, as well as to actual trustees and to agents, and the most important phase of this rule is that which forbids trustees and all other fiduciaries from dealing in their own behalf with respect to the matters involved in the trust,—and this prohibition operates irrespectively of the good faith or bad faith of such dealings. This is an elementary principle of equity jurisprudence, and is unquestioned law. Pomeroy's Eq. Jur. sec. 1077 *et seq.* and notes; Bishop on Non-contract Law, sec.

706; Story's Eq. Jur. sec. 307, *et seq.; '*1 Bates on Partnership, 305; *Roby* v. *Colehour,* 135 .Ill. 300.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

There can be no doubt, we think, that the contract set out in the pleadings created between the parties thereto the relation of partnership in the enterprise of subdividing, platting, advertising and selling the 200 acres of land belonging to Mrs. Winstanley. Mrs. Winstanley was to receive $50,000 out of the moneys first realized from sales, and the other four contracting parties were to defray the expenses incidental to the carrying out of the enterprise, and the five were to share equally in the moneys arising from sales, after the $50,000 were paid Mrs. Winstanley. This gave to each a community of interest in the profits of the enterprise.

We think the court below was justified in holding that the conveyances of considerable portions of the land to Mrs. Fuchs and Mrs. Renshaw were fraudulent and void as against the other contracting parties, and in setting those conveyances aside and treating the lands thus conveyed as partnership assets. The prices at which those conveyances were made are clearly shown by the evidence to be much less than the actual market value of the lands conveyed, and the grantees are so related to the other parties in interest that they can not be permitted in that way to obtain an advantage over the other partners. Mrs. Fuchs is a party to the contract, and is consequently one of the partners, and Mrs. Renshaw is the wife of another partner, and a sister of Mrs. Winstanley. A partner is, by virtue of the partnership relation, incapacitated to purchase or deal in the partnership property for his own benefit, but his purchase must be held to be in trust or for the benefit of the copartnership. This principle alone, disposes of the right of Mrs. Fuchs to claim title under the conveyance to her adverse to the other parties to the contract.

Mrs. Renshaw, though not herself a party to the contract, is the wife of the managing partner. Her husband is shown to have been the chief adviser and principal agent of Mrs. Winstanley in making these as well as the other conveyances of the lands in question. These facts, as well as her relationship to Mrs. Winstanley, necessarily subject her dealings with the partnership property to a very close and searching scrutiny, and even throw upon her the burden of showing good faith and an adequate consideration. We think the evidence clearly warrants the finding of the court below that her title was not acquired in good faith and for a sufficient consideration, and that she stands in no better plight than her husband would have done if he had taken the title in his own name.

Counsel make the point that the partnership is only in the profits of the enterprise, and therefore that the firm has no interest in the lands themselves, and that the lands not being partnership assets, were subject to be disposed of by Mrs. Winstanley as she saw fit, leaving in the other partners the mere right to call her to account by an action at law for a breach of her contract. In this view we are unable to concur. After the payment to Mrs. Winstanley of the $50,000 provided by the contract, the residue of the land remaining unsold became partnership assets. The partners then had the right, by the terms of the contract, to have the land so remaining sold, and upon such sale, to have the entire proceeds distributed as partnership profits. Under these circumstances, the land itself was in equity the property of the firm, and is to be treated in all respects as partnership assets, and the court properly decreed its sale and the distribution of the proceeds on that basis.

We find no error in the decree of which the appellants have cause to complain, and it will accordingly be affirmed.

*Decree affirmed.*