Emil F. Ackerman, Appellee, v. John H. Bickley, Appellant.

Gen. No. 31,899.

Opinion filed February 23, 1928.

EDWIN TERWILLIGER, JR., for appellant.

C. W. SHAEFFER, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

1

This is an appeal by John H. Bickley, the defendant, from an order of the court confirming a judgment by confession, in the municipal court, in favor of the plaintiff and against the defendant in the sum of $6,383.16.

The judgment by confession was entered on July 15, 1926, on three judgment notes, each dated November 8, 1921, and signed by the defendant, John H. Bickley, two being for $2,000 each, and one for $850, all payable 60 days after date, to the order of Emil F. Ackerman, the plaintiff. Each note provided for $200 attorney's fees.

On July 23, 1926, an order was entered opening up the judgment and giving the defendant leave to appear and make a defense, the judgment to stand as security. It also ordered that an affidavit filed by the defendant stand as his affidavit of merits.

It is alleged in the defendant's affidavit that during the month of November, 1921, he and the plaintiff Ackerman were engaged in the business of constructing buildings for sale; that on or about November 8, 1921, they were indebted to divers people in a sum upwards of $4,800 for building materials and supplies furnished to them; "that several of said bills, amounting to upwards of $4,800, were past due"; that the defendant and the plaintiff were unable to pay them; that the plaintiff suggested to the defendant that he execute and deliver to him, the plaintiff, notes in the sum of $4,850, and that he, the plaintiff, would negotiate a loan for $4,850 on the notes, "which money was to be used for the purpose of paying the obligations of the partnership then existing between the defendant and the plaintiff"; that on November 8, 1921, the defendant executed three notes (being the three notes above mentioned upon which judgment was confessed); that he delivered them to the plaintiff for the purpose of negotiating a loan thereon, the proceeds of which would be used in their partnership business; that on or about

November 10, 1921, the plaintiff returned the notes to the defendant, stating that he was unable to negotiate the loan, as he had contemplated; that the notes upon which the plaintiff brought suit are the notes referred to; that the defendant placed the notes in a drawer in his desk, which was located in his home at 4630 North Central Park avenue; that the desk contained the books and papers pertaining to the partnership affairs of himself and the plaintiff; that the plaintiff had access to the defendant's desk until the time of the dissolution of the partnership; that on or about December 12, 1923, an accounting was had, and the partnership was dissolved; that at the time the plaintiff returned the notes to him, the defendant, he, the defendant, placed them in his desk, as stated; that said notes got into the possession of the plaintiff without the knowledge or consent of the defendant, and without consideration.

At the hearing upon the motion there was introduced in evidence certain exhibits and the testimony of the plaintiff Ackerman, of the defendant Bickley, and that of Edward Sager, who acted as an attorney for the defendant up to the time of the trial, and then withdrew so as to become competent as a witness for the defendant.

The plaintiff offered in evidence the three notes and his own testimony that the notes were in his possession and unpaid; that they were given to him on November 4, 1921, and rested.

He was then called by the defendant, under section 33, Cahill's St. ch. 37, ¶ 421, and testified as follows, that he got the notes in question, two for $2,000 each, and one for $850, on the date they bear, for releasing a trust deed which he owned of $4,500, and which was on the property known as 2605 and 2609 Lawrence avenue; that he originally became the owner of the trust deed some time in October, 1921; that he bought the property in question for $7,000 from one Tessie E. Connell; that he gave her cash and a first

mortgage for $6,500; that then he recorded the second mortgage, of which he was the owner, for $4,500. He further testified that he released the trust deed on the lots mentioned, on the date when the notes were executed, and that he got notes for releasing the second trust deed; that he sold the lots to Bickley, and he, Bickley, put up a building on them; that he, Ackerman, was the mason contractor—did the masonry; that he got some of his money for the masonry work; that meanwhile, he held the notes; that after he got through with the job at Lawrence avenue, he built a building at Washtenaw and Ainslie streets, on property owned by Bickley; that after that was completed, he erected a building at Talman and Ainslie; that he then built an 18-apartment building for Bickley; that he had no interest in those buildings, except that he was the mason contractor; that that was in 1921; that in 1922, he did similar work on two other buildings, which were erected for Bickley. When asked if he had any interest in those buildings, he answered in the affirmative. When shown a check for $1,880, dated October 15, 1921, he was asked what Bickley gave him the check for, and he answered that he could not tell without looking at his books.

At that point in the trial, Sager, who was then acting as attorney for the defendant, stated to the court that his position was that Ackerman and Bickley were partners and the notes in question were used for erecting buildings.

At a later hearing, Ackerman testified that he had the books or records showing the account with Bickley, and when asked to turn to the records showing the account of $4,850 for the three notes that were given, he answered, "Why, it isn't in this book." He then testified that the book he had before him showed all the accounts of his dealings and transactions in the year 1921; that it showed all the moneys due him and all the moneys he owed other people. When asked if

there was an account in that book in the sum of $4,850, covering the three notes in question, he answered, "No, there is no record of notes, exactly * * * because this was a separate transaction from my contract." The three notes were given to Bickley for a trust deed which was delivered canceled by one Snydacker. He further testified that in the year 1921 he carried an account at the Second Citizens Bank; that about the time in question, he borrowed $4,000 on the trust deed and notes executed by Bickley and his wife, and given to him for property at Lawrence avenue; that he paid the bank by a certificate on the contract, which he had on the property; that he gave the order to one Cardner, vice president of the bank, to have the trust deed taken over to the Boulevard State Bank and collect the $4,500 on the trust deed; that "he gave them a release deed, but it was taken out of my contract on the building"; that he had one Snydacker cancel the trust deed. He further testified that "Mr. Bickley went over with me and endorsed the note and then afterwards he made a loan on this property and they would not pay out on the loan until this trust deed was released on this property, and Mr. Bickley gave me another trust deed on another piece of property which I should take over to Mr. Cardner, the vice president, and have exchanged for this other one, which Mr. Cardner refused to do. I have the trust deed in my possession, and then there was no other way to do but I would have to—. Mr. Bickley gave me an order of $5,000 on my contract on that building I got. They gave me $500 out of it and they kept the $4,500 to give to Mr. Cardner when he presented it canceled, that is the trust deed, which they did, and my records and certificates here show that I got $5,000 and I would not let them to release that trust deed until I had secured something from my property and that is what I got; I got those three notes"; that according to his recollection, the three notes were made out to the bank;

that the trust deed was canceled on or about that date, the eighth day; that he did four or five jobs for Bickley after the notes were given; that he has no record in his book showing the account between him and Bickley from November 1, 1921, until he ceased doing business with him; that he has no account in his books showing the transactions, merely that the book shows money that he received and money that he paid out in his own contracting business; that he did not keep any record of transactions similar to the three notes of $4,850; that his book merely showed money received and money paid out. When asked, when he presented the last statement, whether it included the $4,850, he answered, "Well, that was never included in my account with him because it was a separate and distinct proposition"; that it was not included in any moneys that Bickley owed him on buildings; that it was not in his book because it had nothing to do with his contracting business; that he kept no other book. When asked if he ever presented Bickley with a statement for the $4,850, and was handed a paper by counsel for the defendant, he answered, "Yes, this is a statement he had given me at the time when a certain building was sold and he tried to wipe this statement out by giving me mortgages or notes on it." When asked if he had an interest in the building at Irving Park and Spaulding, he answered that he merely had an interest in the proceeds of the sale of the building. When asked if he was then interested with Bickley in that particular venture as a partner, he answered, "I was interested with him in buildings merely for the fifty-fifty split of the proceeds after all expenses had been paid"; that the same was true of the property at Washtenaw and Lawrence avenue; that it was understood that he was to "get fifty-fifty of the sale of the building; the profits of the buildings after they were sold and all expenses had been deducted, but there was no partnership agreement as to general contracting. I carried on my own

business.'' When asked whether he remembered being at Sager's, the attorney's, office, in December, 1923, having with him an agreement of partnership, which Sager canceled and turned over to him, he answered that he never had an agreement with him when he was in Sager's office; that on a certain day he agreed to pay Sager $500; that he, the witness, did not have with him the instrument that Sager turned over to him marked canceled; that he does not remember what became of it; that he has looked through his papers and cannot find it; that there never was any such instrument.

On the other hand, it is the evidence of Bickley that he and Ackerman, on September 1, 1921, entered into a written copartnership agreement, which he, Bickley, wrote, and that it was canceled in December, 1923, when a settlement of the partnership was made at the office of Sager, the attorney; that Ackerman was then present; that there was an accounting of all their differences and a balance struck at that time.

The evidence of Sager (who had previously withdrawn as attorney) is that in December, 1923, Ackerman and Bickley called at his office and said they were desirous of dissolving a partnership which had been in existence since 1921; that Bickley presented the partnership agreement which he said he drew up; that Bickley said that they had constructed several buildings after the partnership was started and had sold all of them, and that there was a loss of about $30,000; that he had held title to all the buildings and had represented himself to the different parties as the owner and that he did not want Ackerman, who had been a silent partner all the time, to stand any of the loss, and that he would assume all the obligations, which amounted at that time to $30,000.

Sager further testified that Bickley, Ackerman and he, in his office, went to work; that Ackerman presented a lot of bills that he had paid and payments

that he had made, and accounts; that Bickley presented a statement of account showing items that had been charged to him for the purchase of different things; that he presented statements of "prorations" and sales of buildings showing what the buildings cost and what they sold for; that after about three days' work at his office, Bickley said he would assume all the obligations, on the condition that Ackerman would pay the sum of $500, and dissolve the partnership, the $500 to be paid to him, Sager, for legal services; that he then canceled the partnership agreement by writing on its face the date and the word "canceled," and the cancellation was signed by Bickley and Ackerman, and the document then turned over to Ackerman; that Ackerman then gave him, Sager, a check and two notes, amounting in all to a little over $500; that the check which was for $100 or $150 was duly presented and paid, and later the notes also.

He further testified that he had, before the negotiations leading up to the dissolution and settlement, rendered services to them, not as individuals, but as partners and had been so paid for his services; that for suits started against Ackerman and Bickley, he rendered his bills to them as a partnership and was paid that way.

There is much more evidence than is here referred to, but in the view we take of the case, it does not materially affect the situation. The question which first arises is whether there was a partnership at the time the notes were given, and, if there was, whether the notes were partnership matters. We think the evidence is quite overwhelming that there was a partnership and also that the notes were part of its business, and, further, that there was a settlement of them in December, 1923, at the time of the dissolution, when Sager says the partnership agreement was marked "canceled" and sanctioned by the signatures of both parties. Not only did Bickley and Sager testify to a

partnership, but the plaintiff, although he denied it at first, admitted later that there was a written agreement to divide equally the profits on the sale of the buildings; that the arrangement was that he was to be the contractor on the job and do the contracting at cost, and Bickley was to do the erecting and hold the title, and when the building was sold, he, Ackerman, was to get a profit on a 50 per cent basis after all expenses were deducted; that is, he, Ackerman was to receive 50 per cent of the profit out of the building when it was sold; that that was the arrangement on all buildings.

There is considerable evidence on the subject of the various purchases of the properties and how the purchases and the cost of building were financed, but that, we think, is here immaterial. Such matters would be appropriate only in a suit in equity for an accounting. That Bickley acted as owner and Ackerman as contractor does not decide the question whether or not there was a partnership. Under the agreement that undoubtedly existed, each would be liable as a partner. As between themselves, the community of interest in the profits of operation made them partners, and subjected them to all the rights and liabilities arising from a partnership relation. Partnership Act, paragraphs 7(3), 7(4), chapter 106a, Cahill's St. 1923. In *Phillips v. Reynolds,* 236 Ill. 119, the court said:

"The appellant denied the existence of any partnership, but in his testimony admitted that he was interested with Phillips in particular transactions for the purchase and sale of real estate and a division of profits. Even though no general partnership existed, this was sufficient to constitute a partnership in the particular transactions."

Likewise in *Leeds v. Townsend,* 228 Ill. 451, 456, the court said:

"It is contended by plaintiff in error that the agreement did not provide for a sharing of losses, and that

for that reason it cannot be held that a partnership existed. This contention is properly disposed of by the Appellate Court under the authorities cited. In *Fougner v. First Nat. Bank,* 141 Ill. 124, this court said: 'It is generally said that to constitute persons partners they must share in the profits and losses. It is, however, well settled that it is not now neccessary to show that there is an agreement to bear losses in order to make one liable as a partner. Sharing in the profits is the test.' "

In *VanHousen v. Copeland,* 180 Ill. 74, where the parties had agreed to purchase lots and erect buildings on them, and share the profits, it was held that there existed all the attributes of a partnership. To the same effect are the decisions in *Winstanley v. Gleyre,* 146 Ill. 27, and *Morse v. Richmond,* 97 Ill. 303. And in the latter case, the court held that a note signed by a trustee alone was in fact the note of the partnership, on which the others were equally liable with the trustee, or managing partner. There are many similar cases, such as *Robbins v. Laswell,* 27 Ill. 365; *Briggs v. James H. Rice Co.,* 83 Ill. App. 618; *Slater v. George M. Clark & Co.,* 68 Ill. App. 433; *Wilcox v. Dodge,* 12 Ill. App. 517.

Assuming, therefore, as we do, that there was a partnership, and that the notes in question came into being in the course of partnership matters, the question arises whether the plaintiff is entitled at law to sue his copartner on the notes. We do not think he is. It is true that Ackerman undertook to claim that the notes were a separate, segregated transaction, but his own evidence, let alone that of Bickley, tends to show the contrary, that is, that the money he says he advanced was used as partnership capital, and should be considered, therefore, in a partnership accounting. The notes were given on November 8, 1921; the alleged dissolution took place on December 12, 1923, and after the latter date, they again entered into further partnership

relations and did business as partners. It is the law that where the accounts are unsettled, a partner cannot sue a copartner at law for money advanced by him for the benefit of the partnership business. *Hartzell v. Murray,* 224 Ill. 377; *Martin v. Stubbings,* 20 Ill. App. 381; *Stafford v. Fargo,* 35 Ill. 481; *Burns v. Nottingham,* 60 Ill. 531. In the latter case, the court said: "It is the settled law of this court that one partner can not bring an action in assumpsit against his late partner, unless, upon a dissolution of the co-partnership, the partners account together, and a balance is stated in favor of one, and the other agrees to make payment of such sum. The balance so found must be a final settlement of all the partnership accounts, but balances only struck preparatory to a final account are not sufficient to form the subject matter of an action at law. Until this is done, the remedy is in equity."

Considering all the evidence, we are of the opinion that the finding of the trial judge is manifestly against the weight of the evidence.

Apparently, from the record, there are still unsettled partnership matters, all of which, together with the notes here in question, may be settled in an appropriate suit in equity.

For the reasons stated, the judgment will be reversed.

*Reversed.*

HOLDOM and WILSON, JJ., concur.