## KUYKENDALL v. SCHELL.     (No. 7790.)

(Court of Civil Appeals of Texas. Galveston. April 17, 1920. Rehearing Denied June 30, 1920.)

1. Partnership ⚙=55—Evidence held to sustain finding of existence for sale of land.

In a suit to rescind a contract for the sale of land and to recover money paid, evidence that defendant and the one who made the contract and received the payments had a contract for the subdivision and sale of the lands and shares of the profits which authorized the other to make contracts in their joint names, together with an accounting between the parties of receipts under the contracts, held to sustain a finding that defendant and the other were copartners.

2. Principal and agent ⚙=132(1) — Principal liable for contracts agent was authorized to make.

If a contract between defendant and another for the subdivision and sale of land which authorized the other to make contracts for the sale did not create a partnership, defendant was nevertheless liable to purchasers from the agent for payments made on the contract which he had authorized.

3. Appeal and error ⚙=854(2)—Correct judgment not reversible because of incorrect reason.

Where plaintiff had pleaded defendant's liability, both as partners and as principal, a judgment against defendant, based on a court's finding that he was a partner, will not be reversed because the evidence failed to establish the partnership, where it did show his liability as principal.

4. Vendor and purchaser ⚙=114—Purchaser held not estopped to rescind by failure to demand performance after conveyance to defendant.

The purchaser of a tract of land from defendant and another, who acted as defendant's agent or partner in the transaction, is not estopped to demand rescission and return of payments because he failed to make demand for deed of defendant after the entire interest in the property had been conveyed to defendant, where he did make such demand of the partner or agent as required by his contract, and defendant took the conveyance subject to the obligations of the contract.

5. Vendor and purchaser ⚙=147 — Defendant held bound by demands for conveyance made upon his partner or agent.

A defendant, who took a conveyance of the entire interest in land from his partner or agent subject to the obligations of contracts for sale made by the defendant or agent, is bound by demand for deeds made on the agent in accordance with the terms of those contracts.

6. Vendor and purchaser ⚙=145—Refusal of deeds held not justified by default of purchaser in payment of installments.

Where contracts for the sale of land on installments, provided for the delivery of deeds to the purchaser when one-fourth of the purchase price had been paid, the right of purchaser to deeds after payment of that proportion is not defeated by the fact that at the time demand for the deed was made he was in default in the payment of some of the subsequent installments.

7. Vendor and purchaser ⚙=119—Delay in asking rescission while purchasers were demanding deeds held not to defeat rights.

The delay of purchasers of land in bringing suits for rescission for several years after failure to deliver deeds as called for by the contract, during which time they were repeatedly demanding deeds and seeking performance of the contract, does not defeat their right to rescission and recovery of the installments paid.

---

⚙=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Vendor and purchaser ☞159—Tender of deeds after suits for rescission were filed held too late.**

Where the vendors of land had failed to deliver deeds to the property for several years after the purchasers became entitled thereto, during which time repeated demands for such deeds were made, a tender of such deeds in the answer to a petition for rescission of the contract and recovery of the payments made thereon is too late.

**9. Vendor and purchaser ☞112(1)—Tender of title insufficient when title of vendor is incumbent.**

A tender of deeds to the property sold is insufficient to defeat a purchaser's right to rescind and recover the payments, where at the time of the tender the property was subject to a lien which the purchasers were not required by their contracts to assume.

**10. Vendor and purchaser ☞212—Vendor who took conveyance with obligations held not entitled to recover against his copartner.**

Where defendant took a conveyance of land from another, with whom he had previously had a contract for the subdivision and sale of the land on shares, subject to the contracts made by the other for the sale thereof, he could not, in a suit against him by the purchasers, have judgment over against the other party to the contract for the amount of the payments recovered by the purchasers.

**11. Vendor and purchaser ☞341(5)—Allowance of interest on sums paid only from date of suit for rescission held equitable.**

Where the purchasers of land on installment payments sued to rescind and recover the payments made for the vendor's failure to deliver deeds as required by the contract, the court's ruling in allowing interest on recovery from the institution of the suit will be sustained as equitable, where the purchasers waited several years to bring suit for rescission, and in the meantime several of them were in default in their payments on the land.

Appeal from District Court, Harris County; T. M. Kennerly, Special Judge.

Suit by Warren S. Schell against W. M. Kuykendall and others. Judgment for the plaintiff, and the named defendant appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

C. R. Wharton and St. John Garwood, both of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee to rescind certain several contracts of sale of land made by appellant with appellee and others, hereinafter named in our findings of fact, whose rights had been assigned to appellee, and to recover purchase money paid appellant under said contracts in the sum of $12,000.

It is alleged in the petition that John W. Gaines and W. M. Kuykendall became part-ners in a business venture involving the purchase, subdivision, and sale of certain lands in Matagorda county, Tex., and that as partners, acting through said Gaines, they contracted with Schell and with his assignors, by separate contracts to each, to sell the lands described in each contract upon the terms and stipulations fully set out in the pleadings, involving an agreement to execute and deliver general warranty deeds upon demand after payment by the respective parties of one-fourth of the purchase price; it being also alleged that the contracts obligated the alleged partners to furnish abstracts under each contract. The purchasers were to execute vendors' liens for the balance due. It was alleged in the petition that the purchasers performed their part of the contract by paying one-fourth of the purchase money, and by making demands for deeds and abstracts, but that in each instance performance was denied, and upon the claimed breach of the contracts rescission was sought.

It was alleged in the alternative that, if Kuykendall and Gaines were not partners, in that event Gaines was the agent for Kuykendall, and that the acts of Gaines were binding upon Kuykendall in all essential respects. The amended original answer of W. M. Kuykendall contained a general demurrer, a number of special exceptions, a general denial, a special denial of the partnership relation alleged in plaintiff's petition, verified under oath, and a number of other special pleas concerning different phases of the case, which will be referred to later in the detailed presentation of the assignments of error. In this amended original answer of W. M. Kuykendall, his wife, Mrs. Susan M. Kuykendall, with leave of the court, made herself a party defendant, and, joining with W. M. Kuykendall, made tender of deed to the lands in question to the plaintiff, Schell, conditioned upon Schell's performance of the required provisions of the original contract, and praying the court to deny the rescission asked for, but to allow the specific performance of the original contracts in that manner. They also asked for judgment over against John W. Gaines in the event of any recovery against them on the cause of action asserted by plaintiff.

The defendant John W. Gaines answered by general and special exceptions to plaintiff's petition and the cross-action of defendant Kuykendall. He specially denied the allegations of partnership in plaintiff's petition and made further denials and special pleas in answer to the demands against him, the nature of which it is unnecessary to state as he has not appealed from the judgment.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff against the defendants W. M. Kuy-

kendall and John W. Gaines for the amounts paid under the contracts of sale, aggregating $7,109, with interest thereon from date of the filing of this suit, except as to two payments, one of $594 and another of $110, on which interest was allowed from April 24, 1914, and May 15, 1913, respectively.

The learned trial judge filed conclusions of fact and law, from which we copy and adopt the following:

"On December 27, 1909, defendant Kuykendall and defendant Gaines entered into the following contract and agreement (formal parts being omitted):

" 'The State of Texas, County of Matagorda.

" 'Memorandum of an agreement, this day made and entered into by and between Wiley M. Kuykendall of the county of Bee in the state of Texas, and John W. Gaines of the county of Matagorda, in the state of Texas, witnesseth: That whereas the said parties have this day made and entered into an agreement by the terms of which the said Wiley M. Kuykendall has agreed to purchase a tract of land consisting of 4,509 acres, lying and being situate in the county of Matagorda, state of Texas, and being parts of the Fisher league, Austin league, and International & Great Northern Railroad Company survey and commonly known as the Pelton ranch, upon the following terms and conditions: That is to say, the said Wiley M. Kuykendall is to pay for said premises the purchase price of $15 per acre, or an aggregate price of $67,635, one-third cash and the balance on or before one and two years, and the said Jno. W. Gaines is to take charge of said property; and to handle, subdivide and sell the same for the mutual benefit of the parties hereto upon the following basis of division; that is to say: First, the reasonable cost of subdividing and selling the same shall be deducted and there shall then be paid out of the first proceeds arising from the sale of said property, to the said Wiley M. Kuykendall, all sums of money by him advanced and paid out on account of the purchase price and interest thereon from the dates of the respective payments until all said sums are repaid to the said Wiley M. Kuykendall, and a further sum of 8% interest on all said sums from said date until such repayment.

" 'All sums remaining after sum payments are to be divided equally between the parties hereto, share and share alike, that is to say, one-half to the said Wiley M. Kuykendall and one-half to the said Jno. W. Gaines.

" 'And the said Jno. W. Gaines does further bind himself to look after the examination of titles, abstracts and other things in connection with such purchase, without cost for such services other than the compensation herein provided, and further, to look after the delivery of title to the purchasers, remove objections to abstracts, and such other defects as may arise, without other cost than that herein provided for; it being the purpose of this agreement that the parties hereto shall divide equally all profits made out of said transactions but that no profits shall be deemed to have arisen until the purchase money, together with the interest thereon, as herein provided, shall have been paid, together with the cost of handling the same, as herein set out.'

"Defendant Kuykendall purchased said tract of land, and defendant Gaines proceeded, in accordance with said contract, to subdivide same, place plot thereof of record, and to sell parts of same; the tracts sold to plaintiff and the other persons hereinafter named being parts of said tract of land.

"I find that by virtue of said contract and the dealings between defendant Kuykendall and defendant Gaines, and between them and plaintiff and the persons hereinafter named (of whose claim plaintiff is assignee, as hereinafter set forth), defendant Kuykendall and defendant Gaines became and were partners.

"On July 25, 1911, defendants Kuykendall and Gaines, as partners, entered into a contract with Henry Hansen, which is as follows:

" 'The State of Texas, County of Matagorda.

" 'Memorandum of a contract this day made and entered into by and between W. M. Kuykendall and Jno. W. Gaines, acting herein by Jno. W. Gaines, parties of the first part, and Henry Hansen, party of the second part; witnesseth: That the said parties of the first part do hereby sell to the party of the second part, and do hereby covenant and agree with the said party of the second part to convey to him the following described tract of land, lying and being situate in the county of Matagorda and state of Texas, and being out of and a part of the Gaines & Kuykendall subdivision of the Pelton ranch, and being a part of the S. F. Austin league in said county, and described as follows: Being ten acres of land out of lots No. 43 and 95 of the above subdivision. At and for the price of $50 per acre, to be paid as follows: $12 cash in hand paid upon the execution and delivery of this contract, and $7.50 per month to be paid on the first day of each month thereafter; that is to say, $7.50 to be paid on the first day of September, 1911, and each month thereafter until the whole of the remainder of the purchase price shall have been paid; said sums being for the entire tract of ten acres, and not per acre; that is, the said monthly payments are not meant to be $7.50 per acre, but $7.50 to apply upon the purchase price of the ten-acre tract.

" 'It is agreed that the party of the second part may pay a larger portion of said purchase price at any time, and that said sum or sums will be received and receipted for whenever paid.

" 'It is further stipulated, understood and agreed that after one-fourth of the purchase money for said property shall have been paid in cash, the said party of the second part shall have the right at his option to demand a deed, and upon such demand being made the said parties of the first part will execute and deliver to the said second party a warranty deed conveying a good and sufficient title to said land, furnishing an abstract of title therewith. The remaining part of the purchase price, however, shall then be represented by vendor's lien notes executed and delivered to the parties of the first part, bearing 7% interest per annum from the date thereof until paid.

" 'It is further provided that the parties of the first part shall pay taxes on said land until the party of the second part shall take possession thereof, and improve the same, it being expressly agreed that the second party may at

any time move upon said premises and begin the improvements of same by building fences, houses and other improvements, and breaking and cultivating the ground.

"'This contract is this 25th day of July, A. D. 1911, executed in duplicate,' the parties of the first part acting by Jno. W. Gaines, and the party of the second part acting by Hugh A. Mackie. W. M. Kuykendall and Jno. W. Gaines, by John W. Gaines, Parties of the First Part. Hugh A. Mackie, Party of the Second Part. Henry Hansen. Witnesses: C. A. Erickson, John M. Corbett.'

"Except as to description of land, acreage, amount of payments, and time of payments (the price of the land in each instance being fifty dollars per acre), similar contracts were entered into by defendants Kuykendall and Gaines, as partners, with the plaintiff and those whose rights he holds, to wit: William Brewer, W. B. Coolidge, E. F. Hines, James D. Thomas, Sidney J. Staples, C. E. Twitchell and J. E. Cooper."

The court then finds that each of the purchasers before named, except W. B. Coolidge and J. E. Cooper, paid one-fourth of the purchase money under their respective contracts and made demand upon defendants Kuykendall and Gaines for deed and abstract, which demand was not complied with by the defendants. In regard to Coolidge and Cooper the court finds:

"I find that W. B. Coolidge has paid upon his contract the sum of $594, the dates of the payments being shown by the evidence. He made no demand for a deed after paying one-fourth of the entire consideration, but defendant Gaines, by letter, on April 24, 1914, agreed to repay Coolidge the money paid in by him with 7 per cent. interest to that date. This letter was written and signed for Gaines by a stenographer in Gaines' office, but subsequently Coolidge wrote Gaines four letters regarding the promise, which letters I find Gaines received, and the act of his stenographer was not repudiated, and I find said act to be the act of Gaines.

"I find that J. E. Cooper has paid upon his contract the sum of $110, the dates of the payments being shown by the evidence, and that after the payment of one-fourth of the entire consideration said Cooper demanded of defendants Kuykendall and Gaines deed to the property purchased by him. On the ——— day of May, 1913, defendant Gaines agreed to return the purchase money paid by Cooper."

The court further finds:

"I find that defendants Kuykendall and Gaines, acting together, could have executed and delivered to each of the parties having contracts with them a warranty deed conveying a good and sufficient title to the tract of land mentioned in each of said contracts, save and except that there was, prior to the 12th day of January, 1912, a lien for a large sum of money, to wit, about $45,000, owing upon the large tract, of which the tract described in each of the contracts is a part, to A. M. Pelton. I find that defendants Kuykendall and Gaines have never at any time executed and delivered, nor offered to deliver, to Henry Hansen, William Brewer, W. B. Coolidge, E. F. Hines, Sidney J. Staples, C. E. Twitchell, or J. E. Cooper a warranty deed conveying a good and sufficient title to each of the tracts of land contracted to each of said parties, nor have they furnished each of said parties an abstract of title thereto, as required by the contract.

"I find that on or about March 17, 1914, defendant Gaines tendered deeds to each W. S. Schell and J. D. Thomas, through the First National Bank of Lead, S. D., but did not tender an abstract for said Schell, nor an abstract for said Thomas, as required by the contracts. I find that each of said deeds was accompanied by vendor's lien notes to be executed by said Schell and said Thomas, respectively, but that the dates of maturity of said notes were different from the dates of maturity of the deferred payments as set forth in the contracts with Schell and Thomas. I find that neither of said deeds conveyed a good and sufficient title to the property, for the reason that there was of record at that time a lien upon the larger tract, of which the tracts contracted to Schell and Thomas were a part, for a large sum of money in favor of defendant Kuykendall, and executed to him by defendant Gaines, and a release thereof was not executed and tendered along with said deeds.

"I find that there were continuous importunities and demands by the parties holding these contracts upon defendant Gaines (the legal effect of which I construe to be demands upon defendant Kuykendall as well), continuing from time to time over a period approximately from the time of the payment of one-fourth of the purchase money down to near the filing of this suit, either for a return of the purchase money or consummation of the sale, or some other fair adjustment of the matter. These did not receive the attention upon the part of the defendants which I believe they were entitled to receive. All of which, taken with the demands for deeds under the contracts made as hereinbefore set forth, together with all the circumstances in the case as shown by the correspondence and other evidence in the case, present adequate grounds for a rescission by each of said parties of said contracts and the right to have back purchase money paid. This is particularly true, since it appears that the tracts of land contracted to be conveyed are now worth less than $50 per acre (the purchase price), and were worth less at the time of the filing of this suit.

"I find that on October 6, 1915, Henry Hansen, William Brewer, E. F. Hines, James D. Thomas, Sidney J. Staples, and C. E. Twitchell transferred and assigned to Warren S. Schell their respective rights, title, and interests in and to said contracts, as shown by assignments in evidence; and that on October 16, 1915, W. B. Coolidge in a similar manner assigned his contract to said Schell; and that in July, 1917, J. E. Cooper made a similar assignment of his contract to the said Schell. I find, from the form of said contracts and the surrounding facts, that it was intended by defendants Kuykendall and Gaines that said contract should be carried out by the parties to whom they agreed to convey, or by their assigns or other legal representatives.

"I find that on October 22, 1912, defendant Kuykendall sold and conveyed. to defendant Gaines the larger tract of which the tracts so agreed to be conveyed are parts, reserving a vendor's lien for $153,973.86, evidenced by six notes. The notes were never paid, and on December 5, 1915, Gaines reconveyed to Kuykendall and his wife, in consideration of their cancellation.

"I find that on October 22, 1912, said Gaines and said Kuykendall entered into the following. contract:

" 'State of Texas, County of Matagorda.

" 'Whereas, on the 27th day of December, 1909, Wylie M. Kuykendall and Jno. W. Gaines made and entered into a written contract which is in words and figures as follows, to wit [here the contract of December 27, 1909, is quoted]; and, whereas, under said agreement, the said Kuykendall purchased said land and the said Gaines sold out of said tract, 158 acres, to E. R. Derby, for the proceeds of which sale there has been a full accounting between said Gaines. and Kuykendall; and whereas, the said Kuykendall has recently sold to said Gaines the remainder of' said tract of land, by deed dated the 22d day of October, 1912, thereby changing and abrogating the terms of said written contract above described: Now, therefore, know all men by these presents, that we, the said 'Wylie M. Kuykendall and Jno. W. Gaines, in consideration of the premises aforesaid, have this day mutually covenanted and agreed, and do by these presents mutually covenant and agree, that the aforesaid contract of December 27, 1909, shall be, and the same is hereby in all things revoked, canceled and annulled, and all liabilities and obligations of every kind and character, on the part of either party arising under and by virtue of said contract, are hereby declared to have been fully settled and satisfied, between them, so that neither party shall hereafter have, or assert, any right or claim, against the other, based upon, or growing out of, said contract.'

"I find that the effect of the execution of said contract was the dissolution of the partnership existing between said Kuykendall and said Gaines, and that said partnership was so dissolved on October 22, 1912.

"I find that neither Schell nor the other persons holding said contracts from and under the said partnership had notice or knowledge of said dissolution of said partnership prior to December 6, 1915. All payments made by said persons, both before and after the dissolution of said partnership, were made to defendant Gaines.

"I find that defendant Gaines purchased subject to said contract with said persons when he purchased from Kuykendall October 12, 1912, and defendant Kuykendall purchased in the same manner when he took the reconveyance from Gaines December 6, 1915.

"My opinion is that the legal effect of the contract between Kuykendall and Gaines, dated December 27, 1909, in the light of all the surrounding circumstances and the dealings of the parties between themselves and with others, was to constitute them partners; and, by reason of the peculiar circumstances shown by the evidence in this case, that neither said Kuykendall nor said Gaines can escape liability to these parties with whom they have contracted by reason of the sale subsequent to the entering into of said partnership agreement of the property described in said agreement by the said Kuykendall to the said Gaines, and subsequently by the said Gaines back to said Kuykendall.

"My opinion further is that under the contract between Kuykendall and Gaines and each of these parties they were required to furnish an abstract, along with a deed, whenever one-fourth of the purchase money was paid, and deed demanded, and, having failed to thus comply with the contract to furnish deed and abstract when demanded, and in the light of all the surrounding circumstances, I think that a court of equity should cancel the contracts between the parties and allow a recovery of, and decree the return of, the purchase money. In view of the fact, however, that these parties who contracted with said Kuykendall and Gaines allowed a long lapse of time before suing for such purchase money, and in some cases did not pay up in full, and I believe that a court of equity should in cases of this sort adjust the equities between the parties as far as possible, and do as equal and exact justice to each as is possible under all the circumstances, I am not inclined to allow interest on the purchase money, except from the date of the filing of this suit, the 24th day of June, 1916, at 6 per cent. per annum, except as to $594, the payment made by W. B. Coolidge, which should bear interest at 7 per cent. per annum from April 24, 1914, the date that it was agreed to repay him his money; also except as to $110, the payment made by J. E. Cooper, which should bear interest at 6 per cent. per annum from May 15, 1913, the date that it was agreed to repay him his money; and also except as to E. F. Hines, who paid $1,500, same being in full of his contract, which sum should bear interest from the date of the last payment, August 6, 1914.

"I conclude from the wording of the contracts and the surrounding facts that they are not such contracts as was construed by our Supreme Court in Menger v. Word, 87 Tex. 626, 30 S. W. 853, and that they are assignable, and that the assignments thereof offered in evidence are sufficient.

"I find nothing in these contracts which seems to require these parties to have paid all payments then owing at the time of demand for deed and abstract. Neither do I conclude that failure to furnish deed and abstract was waived by making payments subsequent to such demand. Under all the circumstances shown by the evidence herein, I think the parties would have been justified in stopping payment upon failure of Kuykendall and Gaines to furnish deed and abstract upon their demand.

"I conclude that under all the facts, the offer of defendants to make conveyances, etc., made in their pleadings after the filing of this suit, comes too late.

"I conclude that both defendants Gaines and Kuykendall are liable to refund the purchase money under all contracts where demands were made for deed after the payment of one-fourth of the purchase money, as shown by findings of fact. In the case of W. B. Coolidge, where no demand was made for deed after payment of one-fourth of the purchase money, my conclusion is that the agreement of defend-

ant Gaines to refund Coolidge's purchase money was binding upon both Kuykendall and Gaines, under all the surrounding facts and circumstances. I also conclude that the agreement of Gaines to refund the purchase money of Cooper is, for the same reason, binding upon both Kuykendall and Gaines."

Appellant's first assignment of error attacks the finding of the trial court upon the issue of partnership between Kuykendall and Gaines, on the ground that said finding is contrary to the undisputed evidence. After the execution of the contract between Kuykendall and Gaines in December, 1909, and the purchase of the land by Kuykendall, Gaines took charge of the land, employed a surveyor, caused it to be subdivided, and caused a map of this subdivision to be recorded in the deed records of Matagorda county. This map contains the following acknowledgment:

"I, John W. Gaines, acting herein for W. M. Kuykendall and myself, true owners of the land described in the accompanying plat, do hereby certify that we have caused the same to be subdivided as shown therein for the purpose of more easily describing and identifying the tracts," etc.

The evidence shows that defendant Kuykendall was kept fully informed by Gaines of the contracts of sale made by him and knew the terms of said contracts, and from time to time the purchase money received on the contracts was divided between him and Gaines.

On May 6, 1912, Kuykendall and Gaines had a full settlement of the accounts between them growing out of the sales of the land. In this settlement all of the money received up to that time by Gaines upon the contracts of sale, including those involved in this suit, was accounted for, and after deducting expenses incurred by Gaines in conducting the joint enterprise was equally divided between them. A written memorandum of this settlement, containing an itemized statement of all the matters included therein, was introduced in evidence. Following an itemized statement of the accounts between the parties, this memorandum contains the following statement, which is signed by Kuykendall and Gaines:

"Upon a complete statement of all matters relating to a settlement of all matters relating to the Pelton land up to this date, the above and foregoing statement is approved as correct by all parties, as correct, and Jno. W. Gaines does transfer and assign all of his interest in the R. E. Derby notes to Wiley M. Kuykendall in consideration of the transfer by said Kuykendall of all of his interest in the $871.50 cash to the said Jno. W. Gaines and of the execution and delivery by the said Kuykendall of his promissory note due July 10, 1912, for $935.82, said amount being for all interest in the R. E. Derby notes, and also all sums of money collected as payments on contracts of sale as above set out, to this date, but if such contracts are consummated, the settlement of all sums from this date shall be made under the general terms of the contract heretofore existing between the parties."

The Derby notes referred to in the above memorandum were notes for the purchase money of a portion of this land which was sold by Kuykendall and Gaines to Derby. This was one of the first sales made by Gaines. The deed conveying the land to Derby is signed by Kuykendall and Gaines, and the notes executed by Derby, amounting to something over $6,000, are payable to Kuykendall and Gaines jointly.

[1] We think the evidence sustains the finding that Kuykendall and Gaines in their contracts and dealings with plaintiff and those whose rights he holds were partners, and each of them is liable to plaintiff for the breach of the contracts made by them with plaintiff and his assignors.

Upon its face the contract between Kuykendall and Gaines might be construed as only constituting Gaines the agent of Kuykendall in making subdivisions and sales of the land which Kuykendall agrees to purchase, and giving Gaines as compensation for his services one-half of the net profits which it was contemplated could be made by the purchase, subdivision, and resale of the land, but the interpretation placed upon the agreement by the parties as evidenced by their dealings with each other and with the public justifies the conclusion that they were in fact partners in the enterprise, and, while the title to the land was taken in the name of Kuykendall, it was held by him for the partnership.

The case of Buzard v. Bank, 67 Tex. 84, 2 S. W. 54, 60 Am. Rep. 7, relied on by appellant to sustain his contention that the undisputed evidence in this case shows that Kuykendall and Gaines were not partners in the purchase and sale of the land, is distinguishable from this case. In the case cited the evidence established that Buzard had furnished Pennington $16,500 with which he was to purchase cattle at prices fixed by Buzard, and it was agreed between them that Pennington would keep and care for the cattle and sell them the following spring, or sooner if a favorable opportunity offered. The expenses of buying, keeping, and selling the cattle were to be paid out of the $16,500 advanced by Buzard, and upon the sale of the cattle Buzard was to receive the money advanced by him, and the net profits, if any, arising from the sale were to be divided between them. The understanding of the parties being that Pennington was to receive one-half of the net profits as compensation for his services in buying, caring for, and selling the cattle. Upon these facts it was held that Buzard

did not intend by his agreement with Pennington to make the latter his partner, and could not be held liable for money borrowed by Pennington and used by him in carrying on this cattle business, without the authority or knowledge of Buzard. It being clearly shown by these facts that Pennington's sharing in the profits was in the character of agent and as compensation for his services as such, the presumption of partnership which arises from sharing in the profits of an undertaking was rebutted. In this case the contracts made with plaintiff and his assignors, the terms of which were known to Kuykendall, were the joint contracts of Kuykendall and Gaines, and not contracts made by Kuykendall through his agent Gaines, and the deed to Derby was the joint deed of Kuykendall and Gaines as owners of the land, and the notes for the purchase money were payable to Kuykendall and Gaines jointly. We think it clear that this evidence authorized the finding that these parties were partners in these transactions. Kelly v. Masterson, 100 Tex. 38, 93 S. W. 427; Goode v. McCartney, 10 Tex. 193; Cothran v. Marmaduke, 60 Tex. 370; Heard v. Wilder, 81 Iowa, 421, 46 N. W. 1075; Kayser v. Maugham, 8 Colo. 232, 6 Pac. 803; Winstanley v. Gleyre, 146 Ill. 27, 34 N. E. 628.

[2, 3] If this evidence should be held to establish that Gaines was the agent of Kuykendall, and not his partner, the liability of Kuykendall would be the same, because the evidence shows that Gaines was fully authorized to make the contracts and Kuykendall was fully informed by Gaines of these sales and the terms of the contracts and received the benefits thereof. The plaintiff pleaded in the alternative that if Kuykendall was not liable as a partner he was liable as a principal on the contracts made by Gaines as his agent. If the legal conclusion of the court that a partnership was shown is erroneous, such error would not require a reversal of the judgment when the facts found by the court show appellant's liability regardless of the question of partnership. It is unnecessary to cite authorities to sustain the proposition that when a court renders the right judgment upon the facts found, such judgment will not be disturbed because the court gives an unsound reason therefor. We think this rule applicable here. The court found the facts in regard to the transaction between the parties, and if the facts establish appellant's liability it matters not whether such liability arises from a partnership or an agency, the liability being the same, and if the court erroneously predicated it on a partnership, such error would be harmless.

[4] There is no merit in the second, third, and fourth assignments, which assail the judgment on the ground that plaintiff, acting for himself and those whose rights he now holds, after Kuykendall had conveyed all of his interest in the land to Gaines, continued to deal with Gaines, and made no demand upon Kuykendall, and thereby acquiesced in and ratified the changed status of the parties, and released Kuykendall from all obligation to comply with the terms of the contract.

Kuykendall conveyed to Gaines October 22, 1912, and Gaines being unable, or failing to meet the notes given by him to Kuykendall for the land, reconveyed it to him in December, 1915. None of the purchasers had dealt directly with Kuykendall in the purchase of the land, or in making their payments, and when they, after paying one-fourth of the purchase money demanded their deeds and abstracts in accordance with the terms of the contracts, such demand was made upon Gaines, who was the managing member of the partnership and with whom they had dealt. Conceding that plaintiff knew of the conveyance from Kuykendall to Gaines, and thereafter continued to make demand upon Gaines for a compliance with the contracts of sale, we fail to see how this action on his part could be construed as a waiver or release of his rights against Kuykendall or could operate as an estoppel against his assertion of Kuykendall's liability. The contracts were never complied with, and Kuykendall knew that they were outstanding and unfulfilled when he took a reconveyance of the land from Gaines. Knowing the terms of the contracts, and having received his part of the money paid thereon by plaintiff his conveyance of the land to Gaines did not lessen his obligations to plaintiff under the contracts, and, knowing when he took the reconveyance from Gaines that the contracts had not been complied with by Gaines, he sustained no loss or detriment by reason of the fact that the demands for the deeds were made upon Gaines, and none were made directly upon him until shortly before this suit was filed, and therefore no estoppel could arise from these facts.

For the same reason the failure of plaintiff to notify Kuykendall of the assignments to him by the other purchasers whose rights he is asserting in this suit did not affect Kuykendall's liability.

[5] Assignments 5 to 9, inclusive, complain of the judgment on the ground that a demand on Gaines for a compliance with the contract was not a demand on Kuykendall, and there having been no direct demand upon him, no right of recovery can be predicated upon his failure to execute the deeds in accordance with the terms of the contracts. We agree with the trial court that upon the facts shown by the evidence the demands upon Gaines must be held to be demands upon Kuykendall. He was bound

by the contracts whether Gaines be regarded as his partner or his agent and demands upon Gaines in either capacity were demands upon him, and he could not relieve himself of his obligations under the contracts or impose any additional burden upon the purchasers in the matter of obtaining a deed in accordance with the terms of the contracts by his conveyance of the land to Gaines. If this conclusion is not sound, we see no reason why the failure of Kuykendall to comply with the demands made upon him shortly before this suit was filed does not entitle plaintiff to a rescission of the contracts and recovery of money paid thereon.

[6] The next assignment presents the proposition that plaintiff was not entitled to a rescission of the contract, because at the time demands were made for the deeds he and some, if not all, of his assignors were in default in the payment of some of the installments due under the contracts. All of them had paid the one-fourth of the purchase price of the land, and by the terms of the contracts were entitled to their deeds. We agree with the trial court that there is nothing in these contracts which requires that all payments then owing must be paid before demand could be made for the deeds.

[7] We are further of opinion that the delay on the part of plaintiff and his assignors to assert their right of rescission did not deprive them of such right. Their repeated demands for deeds, their continuing to make payments after they had paid the one-fourth of the purchase money and the deeds had not been executed, show they did not desire a rescission if they could obtain title to the land. The obligation of appellant to deliver the deeds and abstracts was a continuing obligation, and when the purchasers, after repeated demands, failed to obtain their deeds, they had the right to then for the first time demand the return of purchase money paid by them. No equities have arisen in favor of Kuykendall by plaintiff's delay in asserting the right of rescission, and he should not be allowed to escape liability by the forbearance of plaintiff.

[8] We think the trial court properly held that under the circumstances shown by the evidence the tender of the deed by appellant in this suit comes too late to require plaintiff's acceptance.

[9] We also think the tender was insufficient because the title offered was not such as plaintiff was required to accept. As found by the trial court, this land was incumbered by a lien for a large amount upon the larger tract of which the lands sold plaintiff and his assignors were a part, and the purchasers were not required under their contract to accept a title thus incumbered.

[10] The last assignment complains of the judgment in favor of defendant Gaines on the cross-action of defendant Kuykendall. The evidence shows that when Gaines reconveyed the land to Kuykendall in December, 1915, the latter assumed all of the obligations of these contracts, and he is therefore not entitled to recover over against Gaines the sum adjudged against him in this suit.

[11] Appellee by cross-assignment contends that the court erred in not allowing interest on the amounts paid Kuykendall and Gaines from the date of each of said payments. We are not disposed to disturb the finding of the trial court that the equities of this case are met by only allowing interest from the date of the judgment. If we should hold otherwise, the record does not disclose with sufficient definiteness the dates of the numerous payments to enable us to determine what interest should be awarded.

We are of the opinion that substantial justice has been reached by the judgment in this case, and no errors are pointed out which require its reversal. It follows that the judgment should be affirmed and it has been so ordered.

Affirmed.