**WOODSON v. FLOYD et al.**

No. 2680.

Court of Civil Appeals of Texas.

Tenth District. Waco.

June 27, 1946.

Rehearing Denied July 12, 1946.

Robert W. Brown, of Gatesville, for appellant.

Stinnett & Stinnett and T. R. Mears, all of Gatesville, for appellee.

LESTER, Chief Justice.

This suit was instituted by J. E. Woodson, appellant, against H. C. Floyd and wife, appellees, to recover the sum of $1,000 which he claimed as a result of an alleged breach of contract for the sale of certain real property situated in the city of Gatesville; appellant alleging that he, as purchaser, and the appellees, as sellers, entered into a contract for the sale of the land, each putting up the sum of $500 as evidence of good faith on their part and agreeing that the same should be forfeited as liquidated damages in case either party breached the contract. Appellant further alleged that after the contract had been executed the Floyds conveyed to Tom Webb part of the land that they had contracted to convey to him, and by so doing they had put it beyond their power to comply with their part of the contract, and therefore had breached the same.

Appellees filed an answer and cross-action seeking to recover the $1,000 put up as forfeit or liquidated damage money, and alleged that the contract signed by them did not set out the true agreement of the parties in that it included more land than they had agreed to sell, and prayed that the contract be reformed so as to speak the true agreement of the parties; that they at all times were willing to carry out the contract as actually made and had tendered performance of the same.

Upon the conclusion of the testimony appellant filed motion for an instructed verdict, which was by the court overruled. The court submitted the case to the jury upon several special issues, and in response to said issues the jury sustained the theory asserted by appellees, finding that the written contract included more land than was actually pointed out upon the ground and agreed to by the parties, and that the same was included in said contract as the result of a mistake. Both appellant and appellees filed a motion for judgment non ob-

stante veredicto, which the court overruled, and entered judgment denying each a judgment for the full sum of $1,000 put up by both parties as forfeit money but giving to each a judgment in the sum of $500, representing the amount each had deposited as a forfeit or liquidated damages.

Appellant appeals on three propositions, the first two being as follows:

(1) This case should be reversed and rendered for appellant, J. E. Woodson, because the sale made by H. C. Floyd and wife to John L. Webb on August 2, 1945, covering part of the land which Floyd had contracted to sell to J. E. Woodson, under the contract dated July 30, 1945, constituted a breach of the contract as a matter of law.

(2) This cause should be reversed and judgment rendered for appellant, J. E. Woodson, for the reason that the contract, as reformed by the judgment of the court to cover the land as pointed out to J. E. Woodson on the ground, was breached by the deed made to John L. Webb on August 2, 1945, and the appellant was entitled as a matter of law to recover for the breach of the contract as the same was reformed by the court.

These two propositions will be taken up together. The contract provided that the purchaser should, within ten days from the receipt of the abstract of title, accept the title to the property or make his written objections, and the appellees should have a reasonable time thereafter within which to cure such objections, if any made. The contract also provided that possession should be given by August 30, 1945. Appellant's attorney made certain objections to the title and called appellant's attention to the deed of August 2d from appellees to Webb, which deed developed to be the main disagreement between the parties. The evidence shows that H. C. Floyd and Tom L. Webb married sisters and they bought the property at the same time from Mrs. Bettie Walker in 1938, and each went into possession soon thereafter, appellees taking their portion of the property off the east side of said tract and the Webbs off of the west side; that the line between the

property that each claimed was defined by a wire fence, a privet hedge and a rock wall, and that Webb owned one-half of the 15 ft. driveway which they had used jointly since purchasing said property. Mrs. Floyd testified that Mr. Farmer, the real estate agent, and appellant, Woodson, came to look at the property one morning; that she pointed out the property that the Floyds claimed to own; that she showed them the fence, hedge and rock wall that divided the property and told them that their line did not extend beyond that and that Mr. Webb owned one-half of the driveway which they were using jointly; that while they were there appellant, Woodson, agreed to purchase the property as pointed out by her to him for the sum of $8,000; that Farmer and Woodson returned to their home that night and Mr. Farmer, in the presence of Mr. Woodson, told the Floyds that the contract was prepared according to the agreement that morning except the amount of forfeit money to be put up and the date that possession was to be given should be included. The evidence further shows that the agent, in describing the property to be sold, did not attempt to describe the same as pointed out by Mrs. Floyd or as it was situated on the ground, but described the property as being two tracks of land located in the town of Gatesville, Texas, in the C. C. and A. Cazanoba Surveys in Coryell county, Texas, and being the same two tracts of land conveyed by deed of Mrs. Bettie Walker dated October 16, 1938. The Bettie Walker deed included all the property Mrs. Floyd says she pointed out on the occasion, and in addition it extended several feet over and beyond the fence and hedge and would have taken in part of the land Webb had been using and occupying since 1938, and also it included all of the driveway of which Mrs. Floyd testified she told them Webb owned one-half. The evidence further shows that on the 2d day of August, 1945, with the intention of conveying to Webb his one-half of the driveway, with an easement in the other half, the appellees executed to said Webb their deed. The party drawing the deed inadvertently included land which extended beyond the driveway. Appellant was contending all the time that

he was to have the property he had contracted to buy as stated in the contract, and the appellees saying that they were not going to convey any of Webb's property away but they were willing to convey the property that was pointed out on the ground, and no more. Appellees then went to their attorney to see if he could tell them why the deal was not being executed, and he wrote appellant's attorney requesting that he let Mr. Floyd have a copy of his opinion so that he could properly advise his client in the matter. On August 17th he wrote appellant the following letter:

"At the request of Mr. and Mrs. H. C. Floyd, I have examined the opinion of Hon. Robt. W. Brown, concerning the title to certain properties in the town of Gatesville,—a part of which Mr. and Mrs. Floyd were and are under agreement with you to sell you.

"No trouble should be encountered in meeting the requirements of the opinion, except Judge Robt. W. Brown probably does not understand that the lands and premises, which was proposed to be sold and looked at on the ground by you and Farmer on divers occasions, does not include the lands which for years has been under the fence in part of John Webb, nor does the same cover that part of the driveway deeded to Mr. Webb; and if any part of the land under Webb's fence or covered in the deed to Webb, is a part of the lands fixed by you and Farmer in preparing the contract,—then such was inconsistent with the agreement of Mr. and Mrs. Floyd, and did not speak the truth as to what was offered for sale and agreed to be purchased. It is my understanding that on divers occasions it was pointed out to you, to Farmer and in the presence of other parties, just where the line was between what you were to get and what Webb was to get. If this is not true,—then the minds of the contracting parties have never met.

"If therefore, you expect a deed to more land than Mr. and Mrs. Floyd actually and in truth and in fact was pointed out to you on the ground, as being the land proposed to be sold,—then Mr. and Mrs. Floyd will not meet such requirements and there would be no use in going into the matter of meeting the other requirements of the opinion.

"On the other hand, if the above matter is eliminated, then the other requirements can be met and the deal consummated, and Mr. and Mrs. Floyd thereby tender performance of all other requirements in the opinion.

"In order to eliminate further discussion about the matter, I suggest that you advise with Judge Robt. W. Brown and he in turn advise me, for Mr. and Mrs. Floyd, whether:

"(a) You desire to call the deal off as to both parties and each of you withdraw your escrow assets that was put up respectively by each of you and thus close the matter, or

"(b) You desire to close the deal on the basis of the land actually pointed out to you on the ground as the property being sold and meeting all other requirements of the opinion. An early response will be appreciated."

On the 20th of August appellant's attorney replied to the foregoing letter as follows:

"Replying to your letter of August 17 in the above matter.

"In reference to paragraph A of your letter, it is my understanding that a forfeit was placed with the contract to guarantee the faithful performance of the contract, and in the event that either party failed to comply they would be required to pay the forfeit.

"This method of making sales contracts are widely used, and I believe it is also a very satisfactory plan for both parties, and I do not see any reason why the contract should be abandoned without enforcing this provision.

"In reference to Paragraph B of your letter, I thought we were making every effort to close this trade on the basis set out in this paragraph, until Mrs. Floyd called Mr. Woodson over the telephone and told him that she would not convey the land, and suggested that if he wanted to collect the forfeit, he would have to do so through court.

"Mr. Woodson considered this a breach of the contract, and so acted on it.

"In further reference to Paragraph B of your letter, you do not state so, but you infer that Mr. Woodson has demanded a deed to a tract of land other and different from what was pointed out to him on the ground. If this is the fact, it is the first that I have heard of it. Mrs. Floyd called me over the telephone and through a rather lengthy discourse discussed other matters, but I do not recall that she claimed that Mr. Woodson was demanding a deed to any land except what she sold him.

"I regret very much that this controversy has come up between these parties, and if I can assist in working out the matter I will be glad to do so."

Appellant testified that he accepted the deed to John Webb and Mrs. Floyd's statement that she would not deed the property to him, as a breach of the contract, and terminated his relation as far as the contract was concerned. This action on the part of appellant must have been prior to August 20th, because Judge Brown's letter to appellees' attorney, Mr. L. M. Stinnett, dated August 20th, stated that Mr. Woodson considered the contract breached and had so acted upon it. But when we look to the testimony of appellant when he was asked to give in detail just what Mrs. Floyd said to him when she told him she was not going to deed him the property, we find that he testified as follows:

"Q. (Propounded by his counsel): Did they ever tell you they were or were not (having reference to conveying the property)? A. Were not.

"Q. Where was that conversation made to you? A. Down at the house.

"Q. Told you they were not going to? A. Yes.

"Q. As near as you can, state what they told you. A. No answer.

"Q. State whether or not Mr. or Mrs. Floyd told you they were going to. A. Mrs. Floyd said they were not going to deed the driveway or take it away from Mr. Webb.

"Q. Started off giving them an easement? A. She said 'I will not take it away from Mr. Webb and them.'"

Appellant testified that this conversation occurred on the 12th or 15th of August.

■ Now, the question is: Had appellees breached their contract at that time and had refused to carry out the true agreement actually made by the parties as found by the jury, so as to give the appellant the right to abandon the contract and recover the forfeit money put up by appellees? The best way to determine what the parties are demanding in a lawsuit is to refer to the pleadings, and when we look at the pleadings of appellant in this case we find him suing upon the contract as written, and as late as January 26, 1946, appellant filed a supplemental pleading in which he pleaded as follows: "This plaintiff specially denies that any of said property set out in the contract sued on was pointed out to this plaintiff as being the property of John L. Webb, but on the contrary that all of said property was pointed out as being the property of H. C. Floyd and Gladys Floyd, and that during the negotiations for the sale of said property, and at the time of the signing said contract, there was an oral agreement between the plaintiff and said defendant that after this plaintiff acquired the title to said property that he would convey to John L. Webb an easement, beginning on the street and extending south along the present drive, a sufficient distance for the said John L. Webb to have a drive to his garage located on his property just west of the property described in said contract."

We do not believe that at the time appellant abandoned the contract, appellees had completely breached their contract and had at that time refused to carry out the terms of the same as they contended was made, and appellant did not have the right to anticipate or assume that appellees would not perform their part of the contract as found by the jury they had made. At the time appellant says that he terminated said contract, appellees had at least two weeks longer in which to comply with their part of said contract, should August 30th be fixed as the limit in which they could comply, but the contract also provided that they should have a reasonable time in which to meet objections made by appellant. It is true the appellees had conveyed

to Webb a little strip of the land which they had contracted to convey to appellant, though the inclusion of this strip in said deed was unintentional on the part of appellees and on the part of Webb. Appellees had two weeks or longer in which to secure a corrected deed from Webb if he, the said Webb, had been willing at that time (as he claimed he was) to execute the same, and in this connection we set out Webb's testimony, in which he claimed that he informed appellant that he was only claiming one-half interest in the driveway. Appellant testified that Webb asked him to go to the property with him so they went down, and Webb testified as follows:

"Q. Now, Mr. Webb, did you at that time make any statements to Mr. Woodson as to what property you claimed you owned and your rights in the driveway? A. Yes, I had started home to lunch, went by the cab station. Mr. Woodson took me in his car, drove down to my house on the driveway: I told him here's this mark here on the curb; this is the line; ,half of this driveway is mine, goes straight down, and there would be 15 feet come off my fence if you would take this, and this rock hedge. He said something about that we would settle that .later when he got in possession of the place, and about that time Mrs. Floyd came out and said something and he said, 'Well, I wont fuss with a woman, I am going.' I said 'Wait a minute' and he said, 'No, I don't want to have any fuss with a woman': something to that effect. He left.

"Q. What was said, if anything, about the land south of this gate? A. He was speaking of having a fence moved. I said it ran south of the gate; that I didn't care, just the fence line and half of the driveway.

"Q. That is what you claimed then to own? A. That is right.

"Q. And this piece through the gate here (indicating) down to the lane, you did not claim that? A. That I did not have no claim on that whatsoever, just under my fence.

"Q. Now that tract of land you say you did not claim that has been used at all times by the Floyds has it? A. Yes sir."

The record in this case leads us to believe that appellees were willing to sell the property that they claimed they had contracted to sell. At least, they did sell the property on November 24, 1945, to a Mr. Bond for the sum of $7,000 instead of $8,000 which appellant had agreed to pay. Before the sale on November 24th, Webb deeded back the property that appellees deeded to him after the contract was signed, and the court in his judgment found that about August 17th appellees' attorney offered to appellant's attorney to secure a deed from Mr. Webb to all the property that appellees claimed they had contracted to sell and that appellees would make a deed to appellant to the entire property, which appellant refused.

As we have heretofore said, in view of the facts in this case, we do not believe appellant had a right to assume that appellees would not comply with their contract before the time had expired for them to do so, and thereby terminate or abandon his part of the contract.

■ Appellant's third point is submitted as an alternative proposition and contends that the court erred in refusing to submit to the jury a requested issue tendered to the court by him, which was as follows: "Do you find from a preponderance of the evidence that the defendants, H. C. Floyd and Gladys Floyd, breached the contract of sale to J. E. Woodson on or prior to August 20, 1945, by a failure and refusal to tender to the said J. E. Woodson a deed to the land contracted to be sold to the said J. E. Woodson?" We also overrule this proposition, as the whole case is included in this issue and as framed it is purely an issue of law and the court did not commit error in refusing to give same. McCulloh v. Reynolds Mortg. Co., Tex.Civ.App., 196 S.W. 565 and 566; Crane v. Colonial Holding Corporation, Tex.Civ.App., 57 S.W.2d 316, at page 319; Speer on Special Issues, secs. 25, 26, 193 and 195.

■ Appellees contend that the judgment in this case should be reversed and rendered in their favor for the sum of

$1,000, representing all of the forfeit money put up. It is true that the attorneys for appellees wrote the appellant on August 17th, telling him that they were willing to comply with all of the terms of the contract made by them and would convey to appellant all of the property that they had agreed to sell, but at that time the deed to Webb was still outstanding and remained so until November 24th, at which time appellees transferred to a Mr. Bond the same property that the jury found they had agreed to sell to appellant. Appellees at no time tendered to appellant an executed deed conveying a good title to the property that they claimed to have contracted to sell him. We agree with the trial court in holding that the proposed tender of appellees wa's not a sufficient one. Kauffman v. Brown, 83 Tex. 41, 18 S.W. 425; Kuykendall v. Schell, Tex.Civ. App., 224 S.W. 298; Pfeiffer v. Wilke, Tex.Civ.App., 107 S.W. 361; Tex.Jur., Vol. 43, pp. 198, 199 and 200, sec. 124.

The judgment of the trial court is therefore affirmed.