**TEX–WASH ENTERPRISES, INC., et al.**

v.

**H. Dustin FILLMORE et al.**

No. 17290.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 14, 1972.

Opinion March 10, 1972.

Parnass, Weaver, McKaughan & Clement, and James G. Clement, Irving, for appellants.

Schenk & Wesbrooks, Fillmore, Parish, Martin, Kramer & Fillmore, Wichita Falls, and H. Dustin Fillmore, pro se, for appellee, H. Dustin Fillmore.

Dalton, Moore, Forde, Joiner & Stollenwerck, and C. Douglass Forde, Jr., Dallas, for appellees, John Pennington and Quincy Adams.

Watson, Davis, Strother & Weinstein, Dallas, Fillmore, Lambert, Farabee, Purtle & Smith, and Larry Lambert, Wichita Falls, for appellee, Bob Young.

Clements, Kraus & Fiedler, and Joseph V. Semon, Richardson, for appellee, Robert Close.

M. R. Irion, Dallas, for appellee, Walter H. Wilson.

## ON MOTION TO DISMISS

### PER CURIAM.

■ Several of the appellees have moved to dismiss the appeal as to them. Premise is primarily the absence of their names as obligees on the face of the appeal bond. Their motions were countered by that of the appellant seeking leave to file a supplemental transcript containing an amended appeal bond wherein the complaining appellees' names have been added as obligees.

We grant leave to file the amended appeal bond in the supplemental transcript under the liberal construction accorded in such instances to Texas Rules of Civil Procedure 430, "Amendment: New Appeal Bond". See Owen v. Brown, 447 S.W.2d 883 (Tex.Sup.1969).

This leaves the remaining premise for the appellees' motions to dismiss the appeal the appellants' failure to supply the several appellees their copies of appellants' brief, according to the direction of T.R.C.P. 414, "Briefs: Time for Filing, Etc."

Under the law as it existed prior to enactment of the Texas Rules of Civil Procedure a right accrued to one in the position of the complaining appellees to have the appellants' brief stricken on motion. See Gray v. Texas Ice Co., 15 S.W.2d 664 (Beaumont Civ.App., 1929, no writ hist.). Even so, where an appellee had adequate time before date for submission of the case, in which to brief in reply, after discovery and after receipt of a copy of the appellant's brief filed in the cause, thus sustaining no injury, dismissal of the appeal was refused in First Nat. Bank in Wellington v. McClellan, 105 S.W.2d 394 (Amarillo Civ.App., 1937, no writ hist.).

■ Our Rules of Civil Procedure are to be given a liberal construction in affording and preserving a right of appeal. The complaining appellees have in the present instance sustained no injury as a consequence of the appellants' failure to timely furnish copies of the brief. Their motion to dismiss the appeal is overruled.

## OPINION

### MASSEY, Chief Justice.

Appellees H. Dustin Fillmore, et al. are in the position of plaintiffs who obtained summary judgment or summary declaratory judgment of no liability to Tex-Wash Enterprises, Inc., et al. under a guaranty agreement signed by them, and of no liability under the appellants' threatened cause of action additionally asserted on the theory that their acts or omissions amounted to waiver of their right to assert want of liability as lessees under a lease assignment. Such assignment had never been completed in that all who were to be assignors had not signed the instrument. Appellants contend appellees had ratified the contract as one for their own benefit, were estopped to assert want of liability under the assignment of the same lease as to which their intended guaranty had application, or had waived requirement of signature by the assignor who did not sign. Appellants, Tex-Wash Enterprises, Inc. et al., appealed.

We affirm.

The guaranty agreement had relation to a certain corporation which is not a party to this suit. Such corporation, Robna, Inc., was the sole assignee under the lease assignment, and the discharge of the liability of Robna, Inc. was what was intended to be guaranteed. It was signed by a Mr. Bob Young, who had no stockholder interest in Robna, Inc., and also by Mr. H. Dustin Fillmore and three others who did have such a stockholder interest. All these persons desired that Robna, Inc., be enabled to receive from Tex-Wash Enterprises,

Inc., and several individuals (one of whom was Wilson Crabtree) an assignment of a certain real estate leasehold which they held under a fifteen-year lease.

Tex-Wash Enterprises, Inc. may be treated as a corporation organized in early 1969 by a group of persons, each with a contract with others in the group whereby all would become stockholders, entitled to their stock upon paying in to the corporate structure the amount agreed to be paid therefor. One of the members of this group was Wilson Crabtree. He had been active in the promotion of the corporation and of its first enterprise, to-wit: the obtaining of a lease of certain real estate in Dallas, Texas, on which it was anticipated that the corporation would engage in business.

However, after the lease was obtained it was discovered that the business anticipated could not be carried on at the premises because of a deed restriction. Mr. Crabtree lost interest. He failed to pay in the amount he had agreed to pay for his stock and as a consequence he never became a stockholder in Tex-Wash Enterprises, Inc. However, incident to the obtaining of the aforementioned lease the amount paid or agreed to be paid therefor was set out in the lease itself as not only the obligation of Tex-Wash Enterprises, Inc., but also by certain individuals (all of whom were the individuals who undertook promotion and incorporation) who were named as lessees along with Tex-Wash. In other words the lease, and obligation to make compensation therefor, named a group of individuals including Crabtree and Tex-Wash Enterprises, Inc. as lessees. A consequence was an existent leasehold estate as to which Crabtree, Tex-Wash, and the other lessees were in the position of cotenants. This is what Robna, Inc. expected to receive by way of an assignment.

About October, 1969, Crabtree left Dallas and moved to Houston, his whereabouts apparently unknown to those who had been his associates. His associates busied themselves finding someone to whom they could assign or sub-lease the premises. They found such in Robna, Inc., a corporation formed with limited capital to go in the Drive-In restaurant business. A deal was agreed upon through the offices of realtor Hy Fetterman, agent for the Tex-Wash corporation and group.

In the instrument of sub-lease or assignment no member of the group of individuals who promoted Robna's incorporation was a party. Robna, Inc. was named as sole assignee. Such instrument was properly drawn in that the assignors were provided to be all who were the original lessees, including Crabtree. In other words the instrument of contract provided by its terms that Crabtree was to sign it as an assignor and a line was provided for his signature.

Though not naming anyone other than Robna, Inc. as assignee there was an instrument drawn by which the stockholder members of this group, and one other, conditionally agreed to guarantee the obligation of Robna under the assignment. In other words these intended guarantors satisfied the applicable requirement of the Statute of Frauds as applied to the assumption of an obligation to answer for the debt, default or miscarriage of Robna, Inc. However, by the language of such guaranty, coupled with that of the assignment, such guaranty liability was *conditioned upon* the execution of the lease assignment by Tex-Wash Enterprises, Inc. and all the members of the Tex-Wash group.

Tex-Wash Enterprises, Inc., and all the individuals of the Tex-Wash group, except Crabtree, signed the lease assignment instrument as assignors, along with Robna, Inc., as assignee. On the representation of Mr. Fetterman, agent for the Tex-Wash group and Tex-Wash, that the signature of Mr. Crabtree would be obtained upon his return to Dallas, etc., etc., Robna proceeded to enter upon the premises. It erected about $40,000.00 worth of improvements, and, beginning on the intended effective date of the assignment of lease, undertook to pay the agreed monthly rental amount. This continued nearly a year.

Over the period during which this situation continued, soothing statements were made by Mr. Fetterman, the agent, to the effect that Crabtree's signature on the lease assignment would be forthcoming. However, Crabtree was not contacted until about the early fall of 1970, and then by an agent of Robna, not by any of the appellants or their agent. At the time Crabtree took the position that he was in no way interested in the premises and saw no reason why his signature was needed. He agreed to accept the instrument and to discuss the matter with his attorney and decide whether to sign. Indeed, he testified by deposition that in November of 1970 he was willing to sign it and that he talked over the telephone to an agent or officer of Robna, Inc. and so stated, but that such agent or officer told him that there no longer existed occasion to request his signature thereto—in consequence of which he never did sign the instrument.

Appellees' guaranty agreement, accompanying and attached to the lease assignment when delivered to the appellants' agent for use in obtaining the execution of the assignment, contained provision, as follows: "For valuable consideration, . . . and as an inducement to Assignors to execute the foregoing Assignment, the below named individuals do hereby guarantee and promise jointly and severally that if the Assignee shall default in the payment of the rent under the aforesaid assigned lease, . . . they will . . . pay any rents which may then be owed by Robna, Inc. by reason of the lease agreement or this assignment."

The assignment to which the guaranty agreement had relation and referred to by appropriate language contained a provision on its face, as follows: "This Assignment shall become effective upon the date of execution by all parties hereto. . . ." As already noticed it was fully executed by the parties to it with the exception of Mr. Wilson Crabtree. The subject of such intended guaranty was the "rents . . . owed by Robna, Inc. by reason of the (original) lease agreement or this assignment (of it)."

A guarantor's obligation is limited to his undertaking and is not to be extended by construction beyond the terms thereof. In order that one may be bound as a guarantor, against his consent, the terms upon which he agrees to become such must be strictly followed. If the creditor and principal debtor vary the terms of their contract in any material degree then a new contract has been formed different and distinguishable from that upon which he has agreed to be bound, and therefore he is not obligated as a guarantor thereupon. And, since the rule of *strictissimi juris* applies, meaning not only that a guarantor is entitled to have his agreement strictly construed but also that such agreement may not be extended by construction or implication beyond the precise terms of his contract, it necessarily follows that the establishment of the terms of the guaranty contract by the movant in a summary judgment proceeding, where uncontradicted by any counter proof or affidavit, constitutes complete proof or proof as a matter of law settling his obligation in the capacity of guarantor.

Authorities which support the statement of the above paragraph include: McKnight v. Virginia Mirror Company, 463 S.W.2d 428 (Tex.Sup., 1971); Southwest Savings Association v. Dunagan, 392 S.W.2d 761 (Dallas Civ.App., 1965, writ ref., n. r. e.); Jarecki Mfg. Co. v. Hinds, 295 S.W. 274 (Eastland Civ.App., 1927, writ dism., Tex. Com.App., with opinion at 6 S.W.2d 343); Parkview General Hospital, Inc. v. Eppes, 447 S.W.2d 487 (Corpus Christi Civ.App., 1969, writ ref., n. r. e.).

Therefore, with total disregard of any question of whether the appellants, and at least some of the appellees, might have been bound in some contractual sense apart from the instrument of guaranty there would be no guaranty liability because Wilson Crabtree never executed the instrument of lease assignment.

We next consider the matter of the liability of appellees, or some of them, apart from any question of liability predicated upon guaranty. It is to be remembered that Robna, Inc. is not a party.

■ By our examination of the record, made for purposes of testing plaintiffs' motion for summary judgment, we have concluded that it was indisputably established that even should we consider a binding contract of lease assignment to have been made by the instrument (though in fact there is wanting the signature of Wilson Crabtree) the sole principal party assignee was Robna, Inc. In other words, whoever of the appellees might have at any time acted or dealt with any or all of the Tex-Wash group and Tex-Wash Enterprises, Inc. always did so as the agent for his or their disclosed principal, Robna, Inc., and never in the capacity of a principal. Under these circumstances there would be no liability of the appellees, or any of them. See Restatement of the Law, Agency, Ch. 11, "Liability of Agent to Third Person", Sections 320, 338, inclusive.

If there were circumstances in view of which there was some waiver of right—to the benefit of the appellants—it would be the waiver of Robna, Inc. and not of any agent. Whatever might have constituted a ratification of some character—to the benefit of the appellants—it would have been a ratification by Robna, Inc., and not of any agent. If there was some circumstance by reason of which Robna, Inc. was estopped in some way—to the benefit of the appellants—it could only have been such principal, Robna, Inc., which could have been estopped, not any of its agents. The question of the liability of Robna, Inc. would constitute subject matter of another and different suit. As applied to some of the appellees their liability is additionally sought to be established on legal premises other than by the contention that they were guarantors. Where this is sought to be accomplished appellants must be held to have met defeat because of the fact that the record establishes that such appellees were mere agents of Robna, Inc., in no way possible to be held individually bound under any legal or equitable principle.

■ It is to be remembered that the liability asserted by appellants is for the accrued indebtedness resultant through failure of Robna, Inc. to make past due payments of rent. Their contention is that appellees, or some of them, are liable therefor by contractual obligation. Appellants' theory never deviates from the contractual premise. We are of the opinion that they are bound thereby.

■ Even if there were something which appellees, or some of them, may have sought to recover from appellants on the theory of rescission of contract, i. e. sought to be rescinded because of want of promised performance on the part of the appellants to obtain the titular interest promised, there would be no equities arisen which would entitle appellants to demand contractual performance. Appellants' obligation to provide the execution by Wilson Crabtree was a continuing obligation, even though there was entry into possession of the premises and payment of rentals therefor for nearly a year. All that would be evidenced by such entry and use would be that rescission was not desired if what had been promised should be obtained. Murphy v. Lowack, 407 S.W.2d 12 (Fort Worth Civ.App., 1966, writ ref., n. r. e.); Kuykendall v. Schell, 224 S.W. 298 (Galveston Civ.App., 1920, writ dism.).

But what is said in the paragraph next above would apply to Robna, Inc. not any of its agents. Even so, by considering the circumstances of its tenancy, erection of improvements, etc., together with the express unambiguous provisions of the assignment it is obvious that Robna, Inc. never had an effective titular right in the lease premises. That is true by reason of the provision that "This Assignment shall become effective upon the date of execution by all parties hereto . . . ." and because one of such parties, Wilson Crabtree, never did execute the instrument.

No contract having ever come into existence there could be no ratification of it. Furthermore the principles of waiver and/or estoppel necessarily suppose the existence of legally enforceable rights which, but for the existence of intervening rights and defenses, would permit recovery. In the instant case there was no premise for any such supposition. Insofar as Wilson Crabtree was concerned Robna, Inc. was on his property by sufferance. Equitable rights might have arisen in consequence of Robna's occupancy, but no contractual rights ever arose and enured to Robna, Inc. nor to any member of the Robna group, the appellees. Since no remedial right could lie in contract against Robna, Inc. the same is likewise true of every appellee.

The points of error have been severally considered and are all overruled.

Summary judgment is affirmed.